LIEBERMAN, APPELLEE, *v.* PRESENT ET AL., APPELLANTS.

(No. 7617—Decided March 23, 1953.)

*Mr. Samuel L. Chalfie* and *Mr. Harry Kasfir,* for appellee.

*Mr. Sol Goodman,* for appellants.

MATTHEWS, P. J. This is an action to impose a trust upon an undivided one-sixth of the title to a residence located on Wilson avenue in the city of Cincinnati, the entire legal title to which, at the time this action was commenced, was in the name of the defendants as

tenants in common. The plaintiff and the defendant Jean Present are brother and sister. The defendant Morris Present is Jean Present's husband. With the exception of certain documents, the entire evidence was furnished by the testimony of the parties and their brothers and sister.

The evidence shows that at the time of his death in 1933, Max Lieberman owned a dwelling house on Whittier street in Cincinnati, Ohio, in which the family resided and which was encumbered by a mortgage. The balance due on the mortgage was left uncertain by the evidence. Max Lieberman died intestate, leaving surviving him his widow and six children. The widow and two of these children—Milton and Jean—both then unmarried, continued to reside in the family home.

The evidence discloses that Max Lieberman was a wage earner, struggling to maintain his family, and that at the time of his death all he had was this modest encumbered home worth only a few thousand dollars and a bank balance of perhaps $400.

It appears also that up to the time of the father's death, and in spite of the fact that four of the children had married, there still remained considerable cohesion in the family and that this continued after his death so long as his widow, Clara Lieberman, lived. This is evidenced by the fact that shortly after Max Lieberman's death, his six children joined in a deed, transferring all their title in the Whittier street property to their mother. The wives of those who were married released their inchoate dower. It is manifest that the sole purpose of this conveyance was to insure a home for their mother. The fact that Jean joined in the conveyance is conclusive that neither she nor her brothers and sisters had her in mind as a grantee to whom was conveyed either a legal or equitable title.

The evidence shows also that the unmarried children

living with their mother contributed rather regularly to the expense of maintaining the home, and that the married children contributed at irregular intervals. One story was rented and in this way they succeeded in preserving the family home, which was a very modest one, reduced the mortgage debt, and accumulated some money under the control of the mother.

By 1939, the children had reached the conclusion that the character of Whittier street had so changed that it was no longer a desirable place of residence for their mother. The plaintiff happened to learn that this Wilson avenue property was for sale, and being of the opinion that it would be a satisfactory residence for his mother and within her means, brought it to the attention of the family at a meeting at the mother's home on Whittier street. The upshot of that meeting was that it was decided that the Wilson avenue property should be bought as a home for their mother, and that it should be her property, just as the Whittier street residence was then her home and property. A contract was entered into to buy the Wilson avenue property for $4,000. However, the written contract shows that the defendant Jean Present, then Jean Lieberman, signed the contract as purchaser, and that Ben Lieberman, her brother, signed as a witness to her signature. In accordance with the contract. the deed ran to Jean as the grantee. It is clear that the cash payment of $1,000 was made with the funds accumulated by the mother, Clara Lieberman, from various sources within the family, and which the children all regarded as her property. Jean Lieberman signed the mortgage for the unpaid portion of the purchase price.

Clara Lieberman, accompanied by her unmarried daughter, moved from her home on Whittier street to the new home on Wilson avenue, where she continued to live until her death in 1947.

On June 17, 1943, Clara Lieberman sold the Whittier street property for $5,500. The mortgage thereon had been reduced so that after its payment something more than $4,000 remained. On June 21, 1943, a deposit in a bank of $4,000 to the credit of Jean Lieberman was made. It is clear that this money came from the sale of the Whittier street property. Before the sale of the Whittier street property and after the purchase of the Wilson avenue property, there was a rental income of about $90 per month, and the monthly payments required by the terms of the mortgage on the Wilson avenue property were made from these rentals. In that way, the mortgage was reduced so that on February 3, 1945, the balance due was $1,989.90. At that time, Joseph Lieberman, a son, suggested that, as his mother, as he supposed, was paying a higher rate of interest on the mortgage than she was receiving on her bank deposit, she use the money on deposit in the bank to pay the balance due on the mortgage. As a result, the bank records show that on February 3, 1945, $1,989.90 was withdrawn, and the records of the building association, the mortgagee, show that on that same day an identical amount was received by it in payment of the balance due on the Wilson avenue property.

It is manifest that what was done in the matter of providing a home first on Whittier street and later on Wilson avenue resulted from agreement among the children rather than the independent decision of the mother. The children arranged it, and the mother acquiesced. This resulted in part, at least, from the mother's unstable health, which caused her to waver on the borderline between mental capacity and incapacity.

In deeding their interest in the Whittier street property and later arranging for the purchase of the Wilson avenue property, Jean Lieberman's brothers and

sisters certainly were not influenced by the motive of providing a home for Jean to their exclusion. There is strong circumstantial evidence that Jean herself had no such thought at the time. The possibility of turning to her own advantage the fact that the title was in her name seems to have occurred to her at a later time, perhaps as late as 1946, when she married her codefendant. The fact that she withheld from record her deed conveying an undivided one-half title to the Wilson avenue property is significant.

It was not until after the mother's death that the brothers and sisters knew of Jean's claim that she and not her mother was the owner of the Wilson avenue property. In a conversation on the subject of the funeral expenses, Morris Present told Joe Lieberman and Ben Lieberman that Clara Lieberman left no estate. They expressed surprise. Finally, an arrangement was made whereby Morris Present would pay the funeral expenses in consideration of which they agreed to convey their claims as heirs to him and his wife. Morris Present paid the funeral expenses and Joe Lieberman and Morris Lieberman have tendered to him a deed conveying whatever title they might have in the Wilson avenue property to Jean Present and Morris Present.

It is true that the defendant Jean Present claimed that she furnished the money for the cash payment on the Wilson avenue property, but her credibility was discredited on cross-examination. It would seem that she justified herself in so testifying by the fact that to a certain extent there was a commingling at the home of the money contributed by the various members of the family, or, at least, in the use of the money as occasion arose, without too much regard as to whether the obligation discharged was that of one or the other. But the money at the home was that of the mother, notwithstanding the contribution thereto by the chil-

dren. And Jean's contribution thereto, after deducting a reasonable amount for her board and living accommodations, must have been slight. Her employment record shows that during the nine years immediately preceding her marriage, when she quit her employment, her average monthly wage was less than $76.

We have measured this evidence by the rules that where a parent pays the purchase price and takes title in the name of a child, there is a presumption of a gift (40 Ohio Jurisprudence, 280, Section 100), and that to engraft an oral trust upon a deed absolute, the proof must be clear and convincing. 40 Ohio Jurisprudence, 170, Section 34. However, the presumption is rebuttable and the degree of proof may be satisfied by circumstantial evidence.

We have reached the conclusion that it was the money of Clara Lieberman that paid for the Wilson avenue property; that this money was derived from the income from and sale of the Whittier street property; that Jean Present held the legal title in trust for her mother, who owned the equitable title at the time of her death; that an undivided one-sixth descended directly to the plaintiff; and that he is entitled to a decree so finding, and an accounting of the rents and profits derived since the death of Clara Lieberman.

A decree may be presented in accordance with this opinion, together with the costs including a reasonable fee to the master for his services, assessed against defendants.

*Judgment accordingly.*

Ross and HILDEBRANT, JJ., concur.