LEWIS, APPELLEE, *v.* AKERBERG, APPELLANT.[*]

*Motion to certify the record overruled, June 29, 1955.

(No. 4968—Decided December 22, 1954.)

*Messrs. Eagleson & Eagleson,* for appellee.
*Mr. Dahlton R. Kincaid* and *Mr. Barton Griffith,* for appellant.

HORNBECK, J.   This is an appeal on questions of law and fact from a judgment of the Common Pleas Court in favor of the plaintiff and against the defendant, ordering defendant to convey to the plaintiff legal title to the undivided two-fifths interest in fee simple in the premises described in plaintiff's petition.   The cause is submitted upon a stipulation of counsel that the record will be made up of a transcript of the testimony and exhibits in the Common Pleas Court, Franklin County, Ohio, as contained in the bill of exceptions filed in cause No. 4968, this court, and upon such additional testimony by deposition or otherwise as may be presented by either party, and allowed and admitted by the court.

The plaintiff's action is on a contract which she asserts she entered into on July 15, 1920, with her father and mother,

respecting the purchase of real estate described in the petition. The agreement was oral; and, at the time she entered into the contract, the family of the plaintiff consisted of her father, Mathias Akerberg, who died on December 22, 1942, her mother, Mary D. Akerberg, who died on February 11, 1951, and her brother, Herbert V. Akerberg, defendant-appellant.

The plaintiff alleges an oral agreement with her father and mother to join with them in the purchase of real estate to be used as a home by her parents, or the survivor of them, during their respective lives, she to furnish a portion of the purchase price of the property for which she was to own an undivided interest in proportion to the part of the purchase price which she advanced bore to the entire purchase price of the premises; that the title to the premises was to be taken in the name of her father; and that, pursuant to the contract, the purchase was made and the real estate was deeded to her father, the consideration being $15,000, of which sum the plaintiff paid $6,000. It is averred that she thereby acquired an undivided two-fifths interest in the property which was held in trust by her father for her; that at the time of the purchase, her mother and her father and the defendant had full knowledge of the terms of the purchase agreement and of that part of the consideration which was furnished by the plaintiff. She alleged further that on March 17, 1921, the father conveyed the premises described for the consideration of one dollar, love and affection to the mother, and that she took the title to the premises as trustee for the plaintiff for the two-fifths interest therein which she owned and which ownership was known to the mother. It is averred further that the mother, in violation of the original purchase agreement and in breach of the trust, deeded, by quit claim, on August 8, 1946, the described premises to defendant in consideration of one dollar, love and affection; that the defendant took the title to the premises with the full knowledge of the interest of the plaintiff therein, and charged with the obligation as trustee which had theretofore devolved upon the father and the mother.

The plaintiff averred that she had no knowledge of the conveyance to her brother until January 1950. She prays that she may be adjudged the owner in fee simple of the undivided

two-fifths interest in the described premises and that the defendant be required to make such conveyance to her.

The defendant, in October 1951, first filed an answer in the nature of a general denial; and later, in February 1953, on the date of trial, an amended answer in which, as a first defense, he admits the execution of the deeds on the dates and to the parties as averred in the petition and specifically denies all other allegations of the petition.

As a second defense, the defendant denies the purchase agreement pleaded in the petition and avers that the right of the plaintiff to have any trust executed has long since been barred by the statute of limitations. He also pleads that the conveyance from the father to the mother was in breach and derogation of the alleged trust and that in the years 1921, 1926 and 1928, the father and the mother mortgaged the entire interest in the described premises on four separate occasions, all of which were in breach and derogation of the alleged trust.

The third defense is estoppel and laches in that, at no time during the lifetime of the father and the mother did plaintiff assert the claim set out in the petition; and that the defendant, on the faith and security of his mother's title to the described premises, advanced money to his mother and father from the year 1933 up to and including the time of the death of his mother.

For the fourth defense, the defendant avers that in 1943 he paid a mortgage lien against the described premises in the amount of $4,415.81 held by the Ohio State Federal Savings & Loan Association of Columbus, which mortgage was made by the father and mother to the predecessor of that savings and loan association, and thereby became subrogated to the rights and lien of the association; and accepted, on account of such advance and other advances, a note from his mother for $7,000 and a mortgage to secure the same on the premises described in the petition; that prior to August 8, 1946, the defendant also paid to his father and mother for their maintenance and support the total sum of $11,190; and on that date, for the aforesaid considerations and further considerations, a deed to the defendant from his mother was made. The defendant further asserts that thereafter, pursuant to this agreement, as part of

the consideration of the aforesaid deed, he paid to his mother, until her death, an additional sum of $5,581.32, and that the sums of money advanced and the mortgage and deed received by him were received without his knowledge of any claim or lien against the premises other than the mortgage heretofore mentioned, which he paid.

The reply which was filed for the first time in this court denies specifically the affirmative defenses set up in the answer and pleads that the $7,000 which was paid to discharge a mortgage on the premises involved was an accord and satisfaction of any and all amounts claimed to have been advanced prior to that time to the mother of the parties. Further, the plaintiff says that the deed that was delivered to the defendant by the mother was not an absolute conveyance but an equitable mortgage of the undivided three-fifths interest of the mother. The plaintiff prays in her petition that the deed to the defendant be adjudged to be an equitable mortgage.

Appeals were taken from the judgment of the Common Pleas Court both on law and on law and fact, and the appeals have been briefed both ways. Inasmuch as it is agreed that the appeal on law and fact is properly prosecuted, we give no attention to the other appeal and the cause will be heard and determined as upon *de novo* hearing on the stipulation of the parties.

It will be necessary, at the outset, to pass upon the numerous objections interposed by counsel during the progress of the trial. We rule, without comment, as did the trial court, on the objections found at pages 12, 13, 14, 16, 17, 18, 19, 20, 24, 26, 27, 28, 29, 32, 33, 34, 35, 36, 37, 38, 39, 40, 59, 62, 77, 79, 88, 94, 95, 101, 124, 125, 126, 131, 133, 136, 140, 148, 149, 150, 151, 153, 154, 157.

We rule differently than the trial judge as to 38 (second ruling), 39, 47, 49, 56, 66, 87, 89, 90, 91, 92, 93 (second objection), 94, 138, 152.

The plaintiff pleads that she was the cestui que trust of an express trust wherein her father was to take the title to the property described in the petition and to hold two-fifths thereof by reason of the plaintiff advancing $6,000 of the purchase price; that the agreement provided that plaintiff's father and

mother were to live in the property for and during their natural lives. The evidence does not tend to establish an express trust. There is no proof whatever of any express agreement between the father or the mother, or both, and the plaintiff at or about the time the deed was made, and there is no proof of the terms of the agreement. However, it does clearly appear that the plaintiff advanced to her father $7,000 which was placed to his credit; and $6,000 thereof applied by him to the purchase price of the property. The fact that the money was advanced obviously was known to the father and must have been known to the mother because she was a party to the original contract whereby they agreed to purchase the realty.

The deed to the father was executed and delivered on July 13, 1920. Thereafter, on March 17, 1921, the father, for a recited consideration of one dollar, love and affection, deeded the premises to the mother. On August 8, 1946, the mother deeded the real estate to the defendant, which deed was not filed for record until May 28, 1949. A mortgage was given on the property by the father at the time the deed was made to him; and, during the period that the mother held the property in her name, several mortgages were executed. However, they did not increase the original indebtedness.

It is urged that the type of proof of the payment by the plaintiff of a part of the purchase price of the real estate offends the best evidence rule in that there is no production of a check made by the plaintiff covering the amount claimed to have been advanced by her. This contention is not well made for the two reasons suggested in the brief of appellee: (1) That in view of Section 11495, General Code, the evidence proffered and received was the best evidence which the plaintiff could produce; (2) That plaintiff did not plead the giving of a check or facts which would necessarily require the conclusion that a check was given as a part of the purchase price. Independent of the foregoing reasons, the evidence was properly received because the objection to its admissibility was general and not specific that the best evidence was not proffered.

In 40 Ohio Jurisprudence, 275, Section 98, discussing the general doctrine as to purchase money trusts, it is said:

"It may be considered as settled that when A furnishes B

with money to be invested in land, which is so invested, B, taking the title in himself, the title thus acquired is held in trust for A.''

More than twenty cases are cited to support the text. Quite early, our Supreme Court classified the trust thus arising as a resulting trust. *Williams* v. *Van Tuyl*, 2 Ohio St., 336. Since the plaintiff sustains the relationship of daughter to the grantee of the deed, there is special reason for entertaining the presumption of a resulting trust in her favor. *Roberts* v. *Remy*, 56 Ohio St., 249, 46 N. E., 1066; *Mullen* v. *Mullen*, 5 Ohio Dec. Rep., 111.

It having been established that a resulting trust was created in favor of the plaintiff at the time the deed was made to the father, the other questions raised by the pleadings are immediately projected into the case:

(1) The knowledge of the defendant of the trust.

(2) Was he a bona fide purchaser of the real estate?

(3) The application of the statute of limitations, laches and estoppel pleaded as a defense.

(4) To what extent, if at all, should the defendant be secured for money advanced by him to pay a mortgage debt on the premises described in the petition and for the support and maintenance of his mother?

(5) Should the deed to the defendant be decreed to be an equitable mortgage?

The plaintiff avers that the defendant knew of the agreement which she pleads was made at the time the deed was executed to the father. The defendant denies any knowledge of such an agreement. The question is, did the defendant have knowledge of the advancement by the daughter of a part of the purchase price, namely, $6,000, to the father when the deed was made? Of course, the statute, Section 11495, General Code, seriously impaired the ability of the plaintiff and of the defendant to offer any testimony respecting statements of the father or the mother in their lifetime, or of the defendant or the plaintiff during the lifetime of their parents. Thus, the only evidence relating to knowledge was somewhat meager. It appears that long prior to the contract for the purchase of the realty, at the time the negotiations respecting it were carried

on, when the deed was made, and for several years thereafter, the defendant was a member of the household which was comprised of himself, his father, his mother and his sister, the plaintiff. The relationship between the members of this family must be assumed to have been normal in every respect. Nothing appears to the contrary. General financial worth and resources of the father, mother and sister would be presumed, in a general way at least, to have been known to the defendant, as would his father's and his sister's earning capacity, and likewise the income of the mother, if any. The purchase of the real estate in question must have been quite an event in the family, and it required the production of a sizeable sum of money in those days, namely, $15,000. The ownership of the property, the change of residence and other incidents of the acquisition of the new home must have been of mutual concern to all of the family; and in probability, it was discussed at considerable length. It may be of little significance, but it is a fact, that the defendant did not testify or proffer his evidence to support the denial in his answer of knowledge of the money that the sister had advanced towards the purchase price of the real estate. In all, the probative effect of the evidence on the subject of knowledge is that the defendant knew, or should have known, that his sister had advanced money toward the property deeded to the father.

The defendant, to be protected as a purchaser, must be both a purchaser for value and a purchaser in good faith and without notice.

"One who acquires trust property with notice of the breach of trust or who is for any other reason not a purchaser in good faith is not protected as against equities of the beneficiary, but takes the property or funds charged or impressed with the trust, notwithstanding he gives full value in the transaction." 54 American Jurisprudence, 210; 49 Am. St. Rep., 730. See, also, *Jelke* v. *Goldsmith*, 52 Ohio St., 499, 40 N. E., 167, 40 Ohio Jurisprudence, 539. Thus, the extent to which the defendant advanced money to his mother during her lifetime, if it be assumed that it was purchase price, would not avail against the beneficial rights of the plaintiff.

We hold, as did the trial judge in the Common Pleas Court,

that the $7,000 note from the mother to the defendant, secured by a mortgage on the premises described in the petition, was an accord and satisfaction of all money that had theretofore been advanced by the defendant to his mother for her maintenance and support. We are likewise of opinion, as was the Common Pleas Court Judge, that the defendant was subrogated to the rights of the mortgagee whose mortgage was liquidated by the defendant.

The deed from the mother to the defendant recited the consideration as, "of the sum of one dollar and natural love and affection." The court admitted the checks disclosing the sums of money paid by the defendant to his mother during her lifetime, presumably as it bore upon the actual consideration for the deed. We accept the testimony so far as it tends to prove a valuable consideration for the deed.

It is urged that the testimony of Mr. Merchant, who prepared the deed as proffered on page 85 of the record, should be admitted. As tending to show the consideration, testimony was proffered that the witness would state that the consideration for this transaction expressed by the grantor immediately prior to the execution of the deed, was the payment from grantee, the defendant herein, of substantial sums of money, approximating $15,000 or more, and the agreement of the grantee to the grantor as expressed to this witness:

"That the grantee—

"The Court: This is something the grantee said to this witness?

"Mr. Griffith: That the grantee would support the grantor to the extent needed during the remainder of her life."  .

Although the deed, as found in the record, does not bear the notation, it appears from the testimony of Mr. Merchant that he wrote in the instrument that it was a deed of gift and required no tax. This, at the most, was a declaration of the grantor and not conclusive, but is considered along with the other testimony as to the consideration.

The appellant cites *Vail et al.* v. *McMillan,* 17 Ohio St., 617; *Ayres* v. *Cook,* 140 Ohio St., 281, 43 N. E. (2d), 287, to support the admissibility of the testimony. The recital of a consideration of one dollar precludes the conclusion that the instrument was a deed of gift.

In the *Vail case,* the deed expressed a consideration of $350, and the court held that the parol evidence rule was not violated by offering testimony of further consideration of the obligation of the grantee to support the grantor and wife for their lives, respectively. In the *Ayres case,* the deed stated the consideration to be $2,500 cash. The court held evidence to be admissible showing an additional consideration by oral agreement by one of the vendees to leave property to the vendors. Judge Williams, writing the opinion, had this to say on page 284:

"Of course, the recital that the consideration was $2,500 could not be altered or contradicted by showing that the agreement was in fact for a different amount payable in cash. But the agreement for an additional consideration, *viz.,* a promise to leave property by will can be shown, for evidence of such a fact is not deemed inconsistent with or contradictory of the writing." Neither of these cases is authority for the admission of the testimony here. To accept it would be to show a consideration in direct violation of the specific amount stated in the deed.

So far as the consideration was representative of an antecedent debt, it has been held that it is not value within the meaning of the doctrine of a bona fide purchaser. *Lewis* v. *Anderson,* 20 Ohio St., 281; *Churchill* v. *Little,* 23 Ohio St., 301.

The infirmity in the contention of appellant that he was a bona fide purchaser of the property from his mother is not in the failure to show a valuable consideration, but because it fairly appears that he took the deed with notice of the trust in favor of his sister.

Having knowledge of the fact that his sister advanced money toward the purchase price of the real estate taken in the name of his father and later in the name of his mother, when he took a deed purporting to pass all interest in the property, it was his obligation to make such inquiry as to the trust and the terms thereof as ordinary vigilance required. 54 American Jurisprudence, 212.

"If a purchaser has knowledge of the trust, actual or constructive, or is cognizant of facts sufficient to put him on inquiry, he can not claim to be a bona fide purchaser for value

without notice." 40 Ohio Jurisprudence, 537, Section 234. Citing *Greenville Gas Co.* v. *Reis,* 54 Ohio St., 549, 44 N. E., 271.

It may also be observed that the deed under which the defendant claims title is quit claim, which deed passed to the defendant only that interest in the realty described as the grantor owned. *Lessee of Hall et al.* v. *Ashby et al.,* 9 Ohio, 96, 34 Am. Dec., 424.

The defendant pleads the statute of limitations, and in support thereof, he insists that there was a breach of the trust when the father made the deed to the mother in 1921. In our judgment, it does not appear that this was a repudiation of the trust. The general situation of the parties when this latter deed was made was substantially the same as when the former deed was executed, all of the conditions under which the first deed was made must have been known to the mother; and, of course, the daughter knew of the second deed.

It is also contended that the giving of the succeeding mortgages was a breach of the trust which should have put the plaintiff upon notice. These mortgages did not operate to the disadvantage of the plaintiff.

We are cited to *Stianson* v. *Stianson,* 40 S. D., 322, 167 N. W., 237, 6 A. L. R., 280, wherein it was said that the plaintiff's right to an action in equity to establish an involuntary trust accrued the instant appellant acquired such title. In the cited case, the court found that every fact essential to disclose and to constitute a constructive trust in the defendant was a matter of public record more than seventeen years before the action was begun. For nine years, the defendant, after the attaining of majority of the youngest heir, was in sole possession of the realty, claiming title, paying the taxes, receiving and appropriating to his own use rents and profits from the land; and he was never called upon to account therefor by plaintiff. The defendant was an administrator; and also, as an individual, he was a co-tenant with the plaintiff in land which the defendant purchased at foreclosure sale. It was in this connection that the court held that the plaintiff's right to an action in equity to establish the involuntary trust accrued the instant the appellant acquired such title. Manifestly, this was so because the defendant, holding the real estate as an individual and asserting ex-

clusive right of possession to it for years, put the plaintiff, who had access to all the facts, upon notice that he was holding in breach of the trust.

By Section 11236, General Code, the statute of limitations does not apply in the case of a continuing and subsisting trust. If the plaintiff had proven the terms of the trust as pleaded, she had no cause of action until the trust was terminated, which event would have occurred upon the death of the last parent; but the terms of the trust are not established. In the early case of *Paschall* v. *Hinderer*, 28 Ohio St., 568, a resulting trust was established in the father for the benefit of his children, he taking title in his own name. The court held that by taking the whole legal title in his name, he committed a breach of the trust. Here, there is no showing that the taking of title in the name of the father, and later the mother, was in breach of the terms of the trust because it was not contended that the legal title should have been taken in part in the name of the plaintiff. The court in the cited case held that, notwithstanding the breach by the father of the agreement to put the title in part in the name of the children, the trust was subsisting and that the continued possession and use of the *res* as a home and for the support of the family during the minority of the children was not adverse to their rights, and neither the lapse of time nor the statute of limitations would operate against them during such minority. The court held that the statute did not apply to the suit because it was cognizable in equity only. This, of course, was before the enactment of the foregoing statute. The court discusses stale equities and the failure of the children, for many years, to prosecute their suit, and said that "a stale equity is a vexed question hardly susceptible of an accurate definition," and that "Length of time alone is not a test of staleness."

The court comments on the fact that there was no open and avowed repudiation of the trust relation, and that until it so appears, the occupancy will be presumed to be in fulfillment of the trust, and not in derogation of it. While the facts in the cited case and the instant cause are widely divergent, there is some similarity in the fact that the plaintiff, throughout the years, insofar as the record discloses, made no claim to her beneficial interest.

In *Allen, Admr.,* v. *Deardoff,* 14 Ohio App., 16, cited by appellant, the court decided the case in the light of Section 11236, General Code, and held that under the facts there appearing, the trust was not continuing and subsisting, and it applied the pronouncement in *Larwill* v. *Burke,* 19 C. C., 449, 10 C. D., 579, also cited by appellant. This latter case held that to constitute a trust which will not be subject to the bar of the limitation statute, it must first appear that there was a direct trust. Second, it must be of the kind belonging exclusively to the jurisdiction of a court of equity; and third, the question must arise between the trustee and the cestui que trust. We have no difficulty in holding that all three of these essentials were present in this case until the time when the defendant denied the existence of the trust because he could not be heard to say that up until that time he was not a constructive trustee by reason of his knowledge of the trust. In the *Allen case,* the court did not hold that the statute began to run until after the death of the husband and the discovery by his widow that the property was in his name, notwithstanding the purchase price was provided by the wife. There was no claim that the heirs of the husband had knowledge of the trust and its terms. It was the contention of the representatives of the widow that, at the time of the decease of her husband, she was mentally incapacitated, and continued so up to her death; and that by reason thereof, lapse of time would not affect her.

54 Corpus Juris Secundum, 153, in stating the general rule says:

"While there is some authority to the contrary, it has been held that the statute of limitations will not run in favor of the trustee of a resulting trust until the trustee disavows the trust or asserts some inconsistent right to the property and the cestui que trust has knowledge or notice thereof."

It is our opinion that the statute did not run in any event against the plaintiff until she learned of the deed from the mother of the defendant; and, in probability, it did not run until the defendant expressly repudiated the trust.

Although the statute of limitations would not be tolled after a repudiation of the trust without respect to notice, and though it differs somewhat from the facts controlling laches

and estoppel, they are so related in this case. The bar of the statute not being established, neither laches nor estoppel appears.

Upon the claim of the plaintiff that the deed to the defendant should be decreed to be an equitable mortgage, we hold against the contention, without comment.

The judgment in this court is, in all particulars, the same as in the Common Pleas Court.

*Judgment, affirmed.*

WISEMAN, P. J., and MILLER, J., concur.

(Decided March 17, 1955.)

ON MOTION to certify in conflict case.

*Per Curiam.* Appellant moves to certify the record in this case to the Supreme Court, contending the judgment therein is in conflict with a judgment of the Court of Appeals for Warren County, in the case of *Allen, Admr.,* v. *Deardoff,* 14 Ohio App., 16.

We considered the case of *Allen* v. *Deardoff, supra,* and differentiated the holding there from ours as to the application of the statute of limitations. The repudiation of the trust in the *Deardoff case* was definite and certain, and the date thereof fixed. We have expressed our opinion as to the continuing and subsisting character of the trust in this case, and the knowledge of plaintiff's father and the defendant of the trust when each took his deed.

We find no conflict, as contended in appellant's motion. It is denied.

*Motion denied.*

MILLER, P. J., HORNBECK and WISEMAN, JJ., concur.