OPINION
{¶ 1} Defendant-appellant/cross-appellee, Edith Gross, appeals the decision of the Butler County Court of Common Pleas. Plaintiff-appellee/cross-appellant, Albert Fewell, raises a cross-appeal to the same decision. We affirm in part and reverse in part the trial court's decision.
 {¶ 2} Appellee and appellant have lived together since 1974. In 1989, the parties jointly purchased property located at 4652 Millikin Road in Hamilton, Ohio. The property was held by survivorship deed and both were named on the mortgage and note for the property. *Page 2 
Both parties testified that, for the most part, the living arrangement was that appellant paid the mortgage and other bills for the property, while appellee was responsible for the maintenance and household chores.
 {¶ 3} On July 9, 2001, appellee received an inheritance check in the amount of $21,855.33 following the death of his mother. Appellee gave the check to appellant and the funds were deposited into her bank account.
 {¶ 4} In July 2002, appellee began to develop severe stomach cramps. Appellee informed appellant that he was going to the hospital to determine the cause. Appellee testified that the year prior, his brother-in-law suffered similar symptoms, went to the hospital, was found to have cancer, and "never did come out of the hospital." Appellee further testified that he feared that he was undergoing a similar situation.
 {¶ 5} Before going to the hospital, appellee had a conversation with appellant regarding the deed to the Millikin property. Appellee testified that during the conversation, he stated that he wanted to make certain if he died, the deed to the property was clear and appellant would receive the home. Appellant testified that she knew the survivorship deed would enable her to own the property should appellee pass away, but that appellee probably did not understand that it would not be necessary to change the current deed.
 {¶ 6} On July 23, 2002, appellee went to the hospital. Following several tests, it was determined that emergency surgery was required, which was performed the following day. Appellee remained in intensive care in the hospital until August 5, 2002. On July 30, 2002, while appellee was recovering, appellant went to the hospital with a quitclaim deed for the Millikin property, which she had appellee sign. It is disputed whether appellee understood what he was doing because he may have thought he was dying. Appellee testified that when appellant approached him with the deed, "I figured that she had talked to my doctors that — I hadn't talked to them, and I thought that she knew something that I didn't know. But at any *Page 3 
rate yes, I went ahead and signed it."
 {¶ 7} Appellee was released from the hospital later in August 2002. He called appellant to pick him up, but appellant informed him that she would not pick him up and that he could not come home because he had signed over all of his interest in the house to her. Appellant refused to permit appellee to return to the Millikin property, so appellee went to live at his brother's home. Thereafter, appellant recorded the deed on October 10, 2002.
 {¶ 8} Appellee filed suit against appellant to recover the inheritance money and also requested that the trial court set aside the quitclaim deed and restore the survivorship deed. Following a bench trial, the trial judge ordered that the Millikin property was to remain with appellant, but also required appellant to refinance the property, remove appellee's name from the mortgage note, and pay appellee $5,500 for physical labor in improving the value of the house. Further, the trial judge imposed a constructive trust for the inheritance money finding that appellant was holding the money for appellee. As a result, the trial judge also required appellant to pay $16,809.02 to appellee as the remainder of the inheritance less $5,046.31 which appellant had used to pay for an overdraft for appellee. Both parties entered timely appeals to the trial court's decision; appellee assigns two errors, appellant assigns one error on cross-appeal.
 {¶ 9} Assignment of Error No. 1:
 {¶ 10} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT WHEN IT FOUND THAT THE PLAINTIFF/APPELLEE'S MONEY HAD BEEN DEPOSITED INTO APPELLANT'S ACCOUNT TO BE HELD BY THE APPELLANT FOR THE APPELLEE."
 {¶ 11} Appellant argues in her first assignment of error that that trial court erred in imposing a constructive trust on the inheritance money. Appellant argues there is no clear and convincing evidence of fraud or unjust enrichment to support the trial court's finding. *Page 4 
Appellant argues that appellee had his own bank account and would have placed the funds in his account if he intended to keep them. Further, appellant argues that appellee gave her the inheritance to pay expenses and claims that the evidence shows appellant paid "substantial sums of money" on behalf of appellee. Appellant directs this court to examine the weight the evidence in this case, urging that the imposition of a constructive trust was not supported by clear and convincing evidence.
 {¶ 12} A "constructive trust" is "trust by operation of law which arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. It is raised by equity to satisfy the demands of justice."Estate of Cowling v. Estate of Cowling, 109 Ohio St.3d 276,2006-Ohio-2418, ¶ 18, citing Ferguson v. Owens (1984), 9 Ohio St.3d 223,225. "A constructive trust is an equitable remedy that protects against unjust enrichment and is usually invoked when property has been obtained by fraud." Id. at ¶ 19. However, "A constructive trust may also be imposed where it is against the principles of equity that the property be retained by a certain person even though the property was acquired without fraud." Id.
 {¶ 13} A constructive trust is an appropriate remedy for unjust enrichment. Ferguson, 9 Ohio St.3d at 226. In order to recover on a claim of unjust enrichment, the party asserting the claim must demonstrate: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. Hambleton v. R.G. Barry Corp. (1984),12 Ohio St.3d 179, 183. "[B]efore a constructive trust can be imposed, there must be adequate tracing from the time of the wrongful deprivation of the relevant *Page 5 
assets to the specific property over which the constructive trust should be placed." Estate of Cowing at ¶ 22.
 {¶ 14} A party asserting the existence of a constructive trust must prove its existence by clear and convincing evidence. Hambleton
at ¶ 20. "Clear and convincing is that measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established."Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 15} In this case, the trial court found the money deposited in appellant's bank account was to be held by appellant for appellee and, therefore, imposed a constructive trust. The trial court held that appellee proved a constructive trust by clear and convincing evidence. The court found that the funds were traceable to appellant's bank account and that evidence showed that the inheritance money, less the amount appellee paid for appellant's bank overdraft, were held in appellant's bank account for at least a year.
 {¶ 16} We agree with the analysis and findings of the trial court. A review of the record demonstrates that appellee was able to trace the inheritance funds to appellant's bank account. Appellant claims that money was given to her to repay loans, specifically $2,000 for appellee's IRA and $5,000 for a vehicle, and that she was to also use the funds for future expenses. At trial, appellant testified that she loaned appellee $5,000 "years before" receiving the inheritance check and loaned appellee $2,000 for an IRA in the "early `90's." However, appellant presented no evidence, other than her testimony, that the money was to be used as repayment for past loans dating as far back as the early 1990s.
 {¶ 17} Appellant presented evidence of bill payments for household expenses paid by appellant to Butler County Environmental Services, Cinergy, Cincinnati Bell, Rumpke, Kroger, *Page 6 
Meijer and Marsh. The trial court found that payments by appellant "were part of an arrangement made between the two parties based on their living together." The evidence supports the trial court's conclusion. The record shows that appellant had been the party paying these expenses prior to receiving appellee's inheritance check and no evidence was presented showing that appellee had ever made payments or been responsible for these expenses. Accordingly, the trial court held that it would be against equity for appellant to retain the funds and we agree.
 {¶ 18} Appellant's first assignment of error is overruled.
 {¶ 19} Assignment of Error No. 2:
 {¶ 20} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT IN ORDERING HER TO REFINANCE THE REAL PROPERTY AND PAY TO THE APPELLEE THE SUM OF $5500.00 FOR HIS PHYSICAL LABOR IN IMPROVING THE VALUE OF THE HOUSE."
 {¶ 21} Cross-Assignment of Error:
 {¶ 22} "THE TRIAL COURT ERRED WHEN IT ORDERED APPELLANT TO REFINANCE THE REAL ESTATE IN LIEU OF SETTING ASIDE THE DEED TRANSFERRING ALL OF APPELLEE'S INTEREST IN THE REAL ESTATE TO APPELLANT."
 {¶ 23} Since appellant's second assignment of error and appellee's cross-assignment of error concern the same subject matter, we will address both assignments together.
 {¶ 24} Appellant argues that the trial court erred by ordering the property to be refinanced and requiring appellant to pay appellee $5,500 for physical labor performed in improving the house. Specifically, appellee did not request the remedy that the trial court imposed and, as a result, appellant argues that the trial court's remedy in this case is invalid. Further, appellant argues that there is no support for the trial court's award of $5,500 in this *Page 7 
case because no evidence was presented during trial regarding the amount of improvements made to the property.
 {¶ 25} Appellee agrees that the trial court erred by ordering the property to be refinanced because that remedy was never requested in the complaint. However, appellee additionally argues that the trial court erred by failing to set aside the quitclaim deed and reform the original survivorship deed. Appellee requests that this court vacate the quitclaim deed and reform the original survivorship deed on the basis of undue influence.
 {¶ 26} In order to sustain an allegation of undue influence, a plaintiff must prove: (1) that the individual was "susceptible"; (2) that another person had the opportunity to exert the influence; (3) that improper influence was exerted or attempted; and (4) that the influence had the desired effect. Id. at 736.
 {¶ 27} "A deed executed in the correct form is presumed to be valid and will not be set aside except upon clear and convincing evidence. Therefore, a party seeking rescission and cancellation of a deed because of undue influence bears the burden of proof by clear and convincing evidence." Henkle v. Henkle (1991), 75 Ohio App.3d 732.
 {¶ 28} "The mere existence of undue influence, or an opportunity to exercise it, although coupled with an interest or motive to do so, is not sufficient, but such influence must be actually exerted on the mind of the testator with respect to the execution of the will in question. It must be shown that such influence, whether exerted at the time of the making of the will or prior thereto, was operative at the time of its execution or was directly connected therewith. It must be shown that undue influence was exercised with the object of procuring a will in favor of particular parties." Id., citing West v. Henry (1962),173 Ohio St. 489.
 {¶ 29} We agree with the trial court's analysis of the facts in this case and the finding that appellee was subject to undue influence in signing the deed. However, the trial court erred by failing to vacate the quitclaim deed and restore the original survivorship deed. *Page 8 
 {¶ 30} In this case, the trial court found that, "Here plaintiff testified that [sic] parties had been living together since 1974 to the time of his operation July 30, 2002 at which time he executed a quit-claim deed to Edith Gross. This was for the property located at 4652 Millikin Road, Butler County, Ohio. This deed was not recorded until October 10, 2002. Plaintiff Albert Fewell testified that he had been in the hospital for stomach cancer, had just been operated on and was confused at the time that he signed the deed. Prior to Albert going to the hospital, there had been a discussion between him and Edith that if he was dying he wanted to make sure that she had no problem with the property and would sign it over to her. He said he was confused when she came in, that she came in with the deed and he thought it was because she had been informed by the doctors that he was dying. He introduced medical records which indicated that after the surgery on July 29, 2002 he was confused. His brother, Dale Fewell, testified that he visited in the hospital after the operation and plaintiff was confused and he did not know what was going on. Defendant, Edith Gross, testified that he was not confused and knew what he was doing. A notary was presumably present at the time the deed was signed but did not testify as to the state of plaintiff's mind."
 {¶ 31} As a result, the trial court held that, "While the Court could set aside the deed this would only open up an almost identical lawsuit for equity among the parties. The Court orders that the real estate property is to remain in the name of defendant Edith Gross. The Court orders that defendant is to refinance the real estate and remove plaintiff's name from the mortgage note."
 {¶ 32} Civ.R. 54(C) states, "Except as to a party against whom a judgment is entered by default, every final judgment shall grant relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded the relief in the pleadings." Courts are not limited to only grant the relief requested in a complaint. Civ.R. 54 authorizes courts to grant the relief to which a party is "entitled," regardless of whether the party has demanded *Page 9 
the relief in the pleadings.[1] See Raimonde v. Van Vlerah (1975), 42 Ohio St.2d 21. A prevailing party is entitled to the relief according to the proof adduced upon trial. Id.
 {¶ 33} In this case, the trial court concluded that there was sufficient evidence to vacate the quitclaim deed. Nevertheless, rather than vacate the deed, trial court imposed an award for damages and the refinance remedy. The court attempted to justify its remedy by claiming an interest in avoiding future litigation.
 {¶ 34} The trial court found that appellant was entitled to have the quitclaim deed set aside, yet the court failed to do so. As a result, the trial court erred by failing to vacate the deed and, instead, impose the damages/refinance remedy.
 {¶ 35} As the substitute remedy in this case, the court required appellant to pay appellee $5,500 for "his physical labor in improving the value of the house." However, there was no evidentiary basis for this monetary judgment as no evidence was presented at trial regarding the improvements appellee made to the property. As a result, the trial court erred in awarding the $5,500 judgment to appellee.
 {¶ 36} Accordingly, we reverse the trial court's award of $5,500 and its order to refinance the Millikin property. Further, we also reverse and remand the matter concerning the quitclaim deed signed July 30, 2002 by appellee for the trial court to enter judgment on its finding of undue influence by restoring the original survivorship deed.
 {¶ 37} Appellee's cross-assignment of error is sustained. Appellant's second assignment of error is sustained in part and overruled in part.
 {¶ 38} Judgment affirmed in part and reversed in part.
YOUNG, P.J., and POWELL, J., concur.
[1] We recognize, though, that Civ.R. 54 is limited by Civ.R. 8(A), which requires that "If [a] party seeks more than twenty-five thousand dollars, the party shall so state in the pleading but shall not specify in the demand for judgment the amount of recovery sought, unless the claim is based upon an instrument required to be attached pursuant to Civ.R. 10." This issue is not before this court. *Page 1