**BRATE et al., Appellees and Cross-Appellants,**

v.

**HURT et al., Appellants and Cross-Appellees.**

[Cite as *Brate v. Hurt*, 174 Ohio App.3d 101, 2007-Ohio-6571.]

Court of Appeals of Ohio,
Twelfth District, Warren County.

Nos. CA2006–11–139 and CA2007–01–007.

Decided Dec. 10, 2007.

John D. Smith and Michael P. Larez, for appellees and cross-appellants.

Rex A. Wolfgang, for appellants and cross-appellees.

WALSH, Judge.

{¶ 1} Defendant-appellant, Charlotte Hurt, appeals the decision of the Warren County Court of Common Pleas, finding that she was unjustly enriched by her father's construction of an apartment building on land gifted to her by her sister. Plaintiff-appellee, Homer Brate, cross-appeals the decision of the Warren County Court of Common Pleas, finding that the land was a gift to appellant from her sister, Sherry Mack–Walsh.

{¶ 2} Homer Brate originally filed this lawsuit on July 30, 2004, against his daughter, appellant. While this case was pending, Homer died, and his other daughter, Sherry, the executor of his estate, was substituted as plaintiff.

{¶ 3} On August 30, 1972, Homer purchased a vacant strip of land next to the terminal out of which he conducted a trucking business, now known as 973 North Main Street, Franklin, Ohio (the "property"). At the time of purchase, Homer put the title of this strip of land in Sherry's name. The trial court found that Homer did this to shield his assets from creditors. During a bench trial, Sherry

testified that she did not believe the property was a gift to her. She testified, "[I]t wasn't mine, I didn't pay for it. It was his." She also testified that her father had planned to use the property as an investment for retirement. Sherry stated that she never used it in any way or maintained it in any fashion. Finally, she testified that aside from holding legal title to it, she believed that she had no interest in the land whatsoever.

{¶ 4} The trial court found that in 1981, Homer decided to build some apartment units on the property, which was vacant at the time of purchase, with the intent to generate some rental income and provide him and his wife, Opal Brate, with a place to live. Although Homer had attempted to pay for most of the building with cash, he discovered at some point in the process that he needed a $15,000 loan to complete the apartments. The trial court found that he had initially approached Sherry for assistance in obtaining financing on the property, but because Sherry was going through a divorce, she could not help him. According to the trial court's findings, Homer then instructed Sherry to transfer the title by deed to appellant, his other daughter. Neither daughter provided any consideration to Homer for either transaction.

{¶ 5} On January 29, 1982, Sherry and her then husband, Don Mack, signed a warranty deed naming appellant as the new titleholder. Opal Brate paid $10 to have the deed recorded on April 25, 1983. Sometime after the transfer, appellant obtained two mortgages on the property. Although the mortgages were in appellant's name, the trial court found that Homer actually made all of the mortgage payments with his own money.

{¶ 6} After the apartment building was constructed, Homer and Opal moved into one of the apartments and resided there. Appellant lived in another apartment on the property for a period of time. The record shows that appellant paid Homer rent to live in the apartment. On March 24, 2004, there was a fire on the property that caused damage to the apartment building. All residents were forced to leave until repairs were made.

{¶ 7} A short time after the fire, on April 30, 2004, Opal filed for a divorce from Homer, after over 60 years of marriage. On that same day, appellant instituted a transfer-on-death deed on the property in her mother's name.

{¶ 8} On June 4, 2004, appellant's attorney sent a letter indicating that appellant was terminating Homer's "tenancy" in the apartment due to her parents' divorce and Homer's alleged interference with contractors who were renovating the apartments.

{¶ 9} Homer instituted this action against appellant on July 30, 2004, making claims of a breach of fiduciary duty, constructive trust, unjust enrichment, adverse possession, intentional infliction of emotional distress, negligent infliction

of emotional distress, and punitive damages. The trial court dismissed the claims for adverse possession, intentional and negligent infliction of emotional distress, and punitive damages. Appellant filed a counterclaim against Homer, asserting negligence and a cloud on the title to the property. The case proceeded to a bench trial on October 2, 2006. The court issued its opinion on October 24, 2006, and from that opinion, appellant timely appealed, asserting three assignments of error. Appellee timely filed a cross-appeal, asserting two assignments of error. We will address their arguments out of order for ease of discussion.

{¶ 10} Appellant's Assignment of Error No. 2:

{¶ 11} "The trial court erred in ruling that the equitable principal [sic] of unjust enrichment required the establishment of an equitable trust over the land."

{¶ 12} Appellee's Cross–Assignment of Error No. 1:

{¶ 13} "The trial court erred in concluding that the property was gifted to the defendant/appellant by the transfer from Sherry and quieting title in the defendant/appellant's name as requested by her counterclaim."

{¶ 14} Appellee's Cross–Assignment of Error No. 2:

{¶ 15} "The trial court erred by failing to find that the defendant held the property in a constructive trust for Homer's benefit."

{¶ 16} The trial court made the following findings:

{¶ 17} "Sherry Walsh clearly believed that she was intended to hold this property in trust for her father and therefore could not transfer more rights to her sister than she herself had, yet there was no indication on the deed that she was in any way acting as a trustee. There is not one scrap of paper wherein [Homer] expressed his intensions [sic]. Rather, he chose to avoid the expense of proper legal advice and recklessly set out to transfer the property without telling anyone why he was doing so in this particular manner. Therefore, the court concludes that the property was gifted to [appellant] by the transfer from Sherry Walsh to her in 1981. Title is quieted in her name as requested by her counterclaim.

{¶ 18} "The court finds that an unjust enrichment has been proven however by the estate in that there was clearly never any intension [sic] to gift an apartment building to [appellant]. [Citation omitted.] Thus, the court finds a constructive trust was established as to the building."

{¶ 19} Appellant argues that the trial court erred when it found a constructive trust "as to the building" and that the court improperly awarded damages under the theory of unjust enrichment. Appellant asserts that in consideration for Homer's building the apartments on the land, she agreed to take out the

mortgages. Appellee, on the other hand, argues that the trial court improperly found that Sherry had gifted the land to appellant upon the transfer of title in appellant's name. Appellee asserts that the trial court instead should have found a constructive trust on the entire property—land and building.

{¶ 20} According to the Ohio Supreme Court, an appellate court should be "guided by a presumption" that the fact-finder's findings are correct. *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 79–80, 10 OBR 408, 461 N.E.2d 1273. Under these guidelines, an appellate court should not reverse the trial court's judgment unless it is against the manifest weight of the evidence. Therefore, an appellate court shall not reverse if the judgment is supported by " 'some competent, credible evidence going to all the essential elements of the case.' " Id. at 80, 10 OBR 408, 461 N.E.2d 1273, quoting *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. Unlike determinations of fact, which are given great deference, however, an appellate court reviews questions of law de novo. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684.

{¶ 21} Although the trial court concluded that the transfer of land from Sherry to appellant was a gift, its own findings indicate otherwise. An inter vivos gift is established when the following elements are present: (1) an intention on the part of the donor to transfer the title and right of possession to the donee, (2) delivery by the donor to the donee, (3) relinquishment of ownership, dominion, and control over the gift by the donor, and (4) acceptance by the donee. *Bolles v. Toledo Trust Co.* (1936), 132 Ohio St. 21, 7 O.O. 60, 4 N.E.2d 917; *In re Estate of Kenney* (May 13, 1993), Montgomery App. No. 13384, at 1, 1993 WL 169113. Donative intent is established if a transferor intends to transfer a present possessory interest in an asset. See *Helton v. Helton* (1996), 114 Ohio App.3d 683, 683 N.E.2d 1157.

{¶ 22} A reviewing court must view all the facts and circumstances and defer to the trial court under the manifest-weight-of-the-evidence standard when ascertaining whether all the elements of an inter vivos gift have been proven. *In re Estate of Kenney*, Montgomery App. No. 13384, at 3, 1993 WL 169113.

{¶ 23} In deferring to the trial court's findings of fact, it is clear that the transfer of property from Sherry to appellant did not constitute a gift. The trial court found that Homer "instructed Sherry to transfer the title by deed to [appellant]" and that "Sherry Walsh clearly believed that she was intended to hold this property in trust for her father and therefore could not transfer more rights to her sister than she herself had." These findings indicate that Sherry lacked any donative intent to transfer the right of possession of the property to appellant.

{¶ 24} Therefore, in giving deference to the trial court's findings of fact, we conclude that the trial court erred when it found that "the property was gifted to [appellant] by the transfer from Sherry Walsh to her in 1981." Specifically, Sherry lacked the beneficial interest and donative intent to transfer the right of possession of the property to appellant.

{¶ 25} Appellee argues that appellant held the entire property in a constructive trust for Homer. The law recognizes both express and implied trusts. There are two types of implied trusts: constructive and resulting. *Gabel v. Richley* (1995), 101 Ohio App.3d 356, 363, 655 N.E.2d 773.

{¶ 26} A constructive trust arises irrespective of the intention of the parties and is imposed when a person holding title to property is subject to an equitable duty to convey it to another on the ground that she would be unjustly enriched if she were permitted to retain it. Id. The duty to convey the property may arise because it was acquired through fraud, duress, undue influence, or mistake, through a breach of a fiduciary duty, or through the wrongful disposition of another's property. Id. A constructive trust may also be imposed, however, "where it is against the principles of equity that the property be retained by a certain person even though the property was acquired without fraud." *Fewell v. Gross*, Butler App. Nos. CA2006–04–096 and CA2006–05–103, 2007-Ohio-5788, 2007 WL 3133891, at ¶ 12. Thus, a constructive trust "is an equitable remedy imposed to prevent fraud or unjust enrichment." *Glick v. Dolin* (1992), 80 Ohio App.3d 592, 596, 609 N.E.2d 1338.

{¶ 27} Before a court can impose a constructive trust, "there must be adequate tracing from the time of wrongful deprivation of the relevant assets to the specific property over which the constructive trust should be placed." (Citations omitted.) *Fewell*, 2007-Ohio-5788, 2007 WL 3133891, at ¶ 13. A party asserting the imposition of a constructive trust must prove its existence by clear and convincing evidence. Id.

{¶ 28} In contrast to a constructive trust, a resulting trust is based on the parties' intentions. *Gabel*, 101 Ohio App.3d at 363, 655 N.E.2d 773. A resulting trust arises when property is transferred under circumstances that raise an inference that the transferor, or the person who caused the transfer, did not intend the transferee to take a beneficial interest in the property. *Union S. & L. Assn. v. McDonough* (1995), 101 Ohio App.3d 273, 276, 655 N.E.2d 426.

{¶ 29} There are three general situations in which resulting trusts are imposed: (1) where an express trust fails in whole or in part, (2) where an express trust is performed without exhausting the trust estate, and (3) purchase-money trusts. *First Natl. Bank of Cincinnati v. Tenney* (1956), 165 Ohio St. 513,

60 O.O. 481, 138 N.E.2d 15; *Gabel,* 101 Ohio App.3d at 363, 655 N.E.2d 773. The first two situations do not apply to this case.

{¶ 30} A purchase-money resulting trust "arises where title to property is transferred to one person, but the purchase price is paid by another." *Gabel,* 101 Ohio App.3d at 364, 655 N.E.2d 773, citing *Glick,* 80 Ohio App.3d 592, 609 N.E.2d 1338. "Such a situation raises an inference that the title-holder is not intended to possess a beneficial interest in the property." Id. When a parent pays the purchase price and takes title in the name of the child, there is a presumption of a gift. *Lieberman v. Present* (1953), 94 Ohio App. 451, 456, 52 O.O. 155, 115 N.E.2d 865. This presumption, however, can be overcome with clear and convincing circumstantial evidence to the contrary. Id.

{¶ 31} In reviewing the record, we find that the evidence clearly and convincingly shows that a purchase-money resulting trust arose in 1972 when Homer purchased the land in question and titled the property in Sherry's name. Sherry testified that her father approached her and explained that he had purchased a strip of land and that he had planned to put the land in her name. She also testified and the court found that her father had stated that he had planned to use the land as an investment for retirement. Sherry also stated that she exercised no control over the property. Her father paid the taxes on it, he cut the grass, and he maintained the property. Further, she stated that she had no interest in the land whatsoever, aside from holding legal title to it. The trial court found that Sherry had paid no consideration for the property and that she "clearly believed she was intended to hold this property in trust for her father." Furthermore, despite the court's finding that Homer "recklessly set out to transfer the property without telling anyone why he was doing so in this particular manner," the court found earlier in its opinion that Homer had originally put the title in Sherry's name to shield his assets from creditors.

{¶ 32} Sherry's testimony was consistent with her brother Nolan's testimony. He stated that he had always believed it was his father's property because Homer had maintained the property and used it at will. As an example, Nolan testified that prior to building the apartments, Homer hired someone to install gas tanks under the property in question for use in his trucking business and later had them removed.

{¶ 33} Therefore, when Sherry conveyed title to the property to her sister, appellant, she transferred only the legal title that she held as a trustee for her father's property. Even after the transfer, Homer maintained his equitable interest in the property as the grantor and beneficiary of the purchase-money resulting trust. Appellant then held the property as trustee for her father. *See Lewis v. Akerberg* (1955), 100 Ohio App. 209, 60 O.O. 192, 136 N.E.2d 372 (finding

that mother held property in trust for daughter when daughter was beneficiary of purchase-money trust resulting from father's taking title in his own name and mother knew of trust at time of taking conveyance from father).

{¶ 34} The record in this case supports a finding that appellant knew she was not the equitable owner of the property upon its conveyance to her. It appears from the trial court's decision that it did not find persuasive appellant's testimony regarding the transfer of title to her name. Despite appellant's testimony that she believed she was receiving the property from her sister because Sherry was going through a divorce and did not want her husband to obtain it in the course of the divorce, the trial court found that it was Homer who had instructed Sherry to transfer title to appellant so that he could obtain financing for his apartment building. Appellant's testimony was also discredited by evidence that Sherry's ex-husband also signed the transfer of title to appellant. Furthermore, although appellant testified that Homer then built her the apartment building as a retirement investment for her future, the court found that Homer intended to use the property as a residence and means to generate income for himself and his wife.

{¶ 35} In addition, Homer's estate presented a piece of evidence from 1998 that bears Charlotte's signature. The evidence appears to be a handwritten document with the following language: "To whom it may concern The Apt Building at 973 N. Main St. Franklin belong's [sic] to Homer & Opal Brate But is in my name Charlotte Hurt * * *." It is signed by Charlotte and dated 6/10/98. The trial court's findings support the validity of that document, as the court found that appellant exercised no control over the property prior to 2004, aside from allowing Homer to obtain mortgages in her name. The court also found that Homer built and paid for the building on the property and maintained the property. Until the time of the fire, the court found that Homer had collected the rents and had paid off both mortgages. Further, the court found that appellant had incurred no out-of-pocket expenses in any of these transactions. The trial court noted that Homer had previously owned an apartment complex in Middletown that he constructed. He and his wife had previously lived there, and they generated income and paid for the building with the collection of rents. The court found that Homer was "clearly" repeating this scenario with the property in dispute and "in no way intended to give such an expensive gift" to appellant, thereby disregarding any testimony from appellant that Homer actually built and maintained the building as her property manager as a retirement investment for her.

{¶ 36} Accordingly, we hold that the trial court erred in finding that the transfer of title from Sherry to appellant was a gift and erred in ordering appellant to pay $115,300 to her father's estate as unjust enrichment. Instead,

we find that when Sherry transferred title to appellant, she transferred only her interest as trustee of a purchase-money resulting trust. Therefore, appellant holds as trustee the property, i.e., the apartment building *and* the land upon which it sits, in a resulting trust for her father's estate.

{¶ 37} Appellant's Assignment of Error No. 1:

{¶ 38} "The court erred in ruling that the claims of unjust enrichment and/or constructive trust was [sic] not barred by the statute of limitations."

{¶ 39} Appellant argues that "R.C. 2305.04 bars a claim for constructive trust [twenty-one] years after the property was transferred, and R.C. 2305.09 bars a claim for unjust enrichment [four] years after the benefit was conferred." Because we previously concluded that appellant held the property in a resulting trust for Homer, we will address the statute of limitations issue in the context of a resulting trust.

{¶ 40} The statute of limitations will not run in favor of the trustee of a resulting trust until the trustee disavows the trust or asserts some inconsistent right to the property or until the defendant expressly repudiated the trust. *Lewis,* 100 Ohio App. at 221–222, 60 O.O. 192, 136 N.E.2d 372. In this case, the magistrate found that the "alleged breach of trust occurred in 2004 when [appellant] took steps to evict Homer from the property and not in 1982 as [appellant] contend[s]." The trial court adopted the magistrate's findings. We agree that the statute of limitations did not begin to run until appellant asserted an inconsistent right to the property after the fire in 2004. Appellant's first assignment of error is overruled.

{¶ 41} Appellant's Assignment of Error No. 3:

{¶ 42} "Even if unjust enrichment were proper, it must be offset by the amount of Opal Brate's half, the amount of taxes paid and the amount of the mortgages."

{¶ 43} As we found that appellant held the property in a resulting trust for Homer, we will address this assignment of error in the context of our ruling. First, appellant's argument that Opal Brate should be awarded half of the judgment because "he wrote her out of his will" is not properly before us in this action.

{¶ 44} Second, the trial court found that appellant incurred no out-of-pocket expenses regarding the property and that Homer had paid off both mortgages on the property. Therefore, we hold that the trial court did not err when it refused to offset any award by the amount of the mortgages.

{¶ 45} Finally, the trial court did find that appellant incurred a "small amount" of real estate taxes after she exerted control over the property in 2004. Because the trial court did not find that a resulting trust occurred, it did not address

issues arising out of that finding, such as whether there was a breach of a fiduciary duty by appellant. We therefore remand this matter to the trial court to resolve issues arising out of appellant's exertion of control over the property, including whether there was a breach of fiduciary duty and whether a reconveyance of the property to the estate should include an offset for the amount of taxes paid by appellant. See *Gabel*, 101 Ohio App.3d at 366, 655 N.E.2d 773 (finding that trustees of resulting trusts stand in a fiduciary relationship to the trust beneficiaries and are under the duty to convey the property to the beneficiary or in accordance with his directions). Therefore, appellant's third assignment of error is overruled in part and sustained in part.

{¶ 46} In conclusion, we hold that a resulting trust arose when Homer purchased the property and titled the property in Sherry's name and that Sherry transferred only her interest as trustee to the resulting trust when she transferred title to appellant. Therefore, appellee holds equitable title to the property, which includes both the land and building.

{¶ 47} We remand the cause to the trial court to address the issues arising out of our determination that a resulting trust existed, including whether there was a breach of fiduciary duty and whether a reconveyance of the property should include an offset for the amount of taxes paid by appellant.

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

YOUNG, P.J., and POWELL, J., concur.