[Cite as *Fannie Mae v. Winding*, 2014-Ohio-1698.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| FANNIE MAE, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2013-09-179 |
| | : | O P I N I O N |
| - vs - | | 4/21/2014 |
| | : | |
| JULIA M. WINDING n.k.a. Gaines, et al., | : | |
| Defendants-Appellants. | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2012-07-2497

Plunkett Cooney, Amelia A. Bower, David L. VanSlyke, 300 East Broad Street, Suite 590, Columbus, Ohio 43215, for plaintiff-appellee

Noel M. Morgan, Brian Howe, 215 East Ninth Street, Suite 500, Cincinnati, Ohio 45202, for defendant-appellant

Steven C. Katchman, 137 North Main Street, Dayton, Ohio 45402, for defendant, Semma Enterprises & Hawthorne Glen Nursing Center

**RINGLAND, P.J.**

{¶ 1} Appellant, Julia Winding Gaines, appeals from a decision of the Butler County Court of Common Pleas granting summary judgment and a decree of foreclosure in favor of appellee, Fannie Mae. For the reasons stated below, we affirm in part, reversed in part, and modify the decision of the trial court.

{¶ 2} On January 30, 2006, Ligon Gaines purchased a home in Middletown, Ohio. To finance the purchase, Ligon executed a promissory note in favor of Middletown Mortgage in the principal amount of $91,500. In order to secure the note, Ligon also executed a mortgage in favor of Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for Middletown Mortgage. Ligon was the only person who signed the note and mortgage. While Ligon was listed as the sole borrower under the note and mortgage, the property was deeded to "Ligon Gaines, an unmarried person, and Julia Winding, an unmarried person for their joint lives remainder to the survivor of them." Subsequently, Middletown Mortgage transferred its rights under the note to Flagstar Bank, which in turn endorsed the note in blank. Fannie Mae is now in possession of the note. Additionally, MERS assigned its interest in the mortgage to Fannie Mae.

{¶ 3} In 2007, Ligon and Julia were married. In August 2011, Ligon died and by the terms of the survivorship deed the entire interest in the property passed to Julia. Julia made two loan payments after Ligon's death but thereafter was unable to afford the mortgage and ceased the monthly payments.

{¶ 4} On July 6, 2012, Fannie Mae filed a foreclosure complaint against Julia. Julia counterclaimed, requesting a declaratory judgment that she owned the property unencumbered by Fannie Mae's mortgage. Fannie Mae then moved for summary judgment. In its summary judgment motion, Fannie Mae argued that its mortgage was enforceable against Julia because she took the property "subject to" the mortgage. Additionally, Fannie Mae maintained that even if the mortgage was not enforceable against Julia, the court should impose an equitable lien, constructive trust, or purchase-money resulting trust to allow it to foreclose upon the property. Julia filed a cross-motion for summary judgment requesting that the court find her home is unencumbered by the mortgage and that Fannie Mae is not entitled to an equitable remedy.

{¶ 5} In support of its summary judgment motion, Fannie Mae submitted Julia's deposition. Julia explained that at the time of purchase of the home, she and Ligon were not married but had lived together for 30 years. The couple had shared a home and household expenses and raised Julia's children together. In 2005, the couple decided to purchase a home. The pair decided that Ligon would finance the home individually as Ligon earned substantially more money than Julia. Due to an injury, Julia had not worked for several years and received only social security income. At the time of closing, Ligon paid the entire $5,000 down payment. The closing was attended by both Ligon and Julia.

{¶ 6} During her deposition, Julia gave various reasons as to why her name was included on the deed. At first, she stated that she did not "make any demand" upon Ligon that she be included on the deed. Later, she testified that they always had the understanding that Ligon would purchase a home but the couple would jointly own the property. Julia stated that no one from Middletown Mortgage said that her name would have to be included on the mortgage and note in order for the home to be purchased. Julia also acknowledged that she would have refused to sign the mortgage and the note because she was unable to afford the mortgage payments.

{¶ 7} On September 4, 2013, the trial court granted summary judgment in favor of Fannie Mae and denied Julia's cross-motion for summary judgment. The court reasoned that Fannie Mae does not have a "valid first mortgage lien upon the premises as against" Julia. However, the court found that based upon the undisputed facts set forth by Julia, Fannie Mae "is entitled to the imposition of an equitable lien, constructive trust, and/or purchase-money resulting trust as to any/all legal and/or equitable interest" in the property and is entitled to foreclose upon the property.

{¶ 8} Julia now appeals, asserting two assignments of error:

{¶ 9} Assignment of Error No. 1:

{¶ 10} THE TRIAL COURT ERRED BY RULING THAT [JULIA'S] PROPERTY INTEREST IS ENCUMBERED BY HER LATE HUSBAND'S MORTGAGE.

{¶ 11} Assignment of Error No. 2:

{¶ 12} THE TRIAL COURT ERRED BECAUSE IT LACKED EQUITABLE POWER TO DISPOSSESS [JULIA] OF HER OWNERSHIP INTERESTS IN FAVOR OF FANNIE MAE.

{¶ 13} Julia makes two arguments on appeal as to why the trial court erred in denying her motion for summary judgment and granting summary judgment and a decree of foreclosure in favor of Fannie Mae. First, Julia argues that granting foreclosure was improper because her property interest was not burdened by the mortgage pursuant to the survivorship tenancy statute, R.C. 5302.20.[1] Second, Julia argues that the court erred in imposing an equitable lien, constructive trust, and/or a purchase-money resulting trust as to any legal or equitable interest of Julia.

{¶ 14} This court reviews a trial court's decision on summary judgment under a de novo standard of review. *Fifth Third Mtge. Co. v. Bell*, 12th Dist. Madison No. CA2013-02-003, 2013-Ohio-3678, ¶ 24. Summary judgment is appropriate under Civ.R. 56 when (1) there is no genuine issue of material fact remaining to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor. *BAC Home Loans Serv., L.P. v. Kolenich*, 194 Ohio App.3d 777, 2011-Ohio-3345, ¶ 17 (12th Dist.), citing *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370 (1998). The party requesting summary judgment bears the initial burden of informing the court of the basis for the motion and identifying those portions

---

1. In her first assignment of error, Julia mischaracterizes the trial court's holding as finding that her interest was subject to the mortgage under R.C. 5302.20. We note that the trial court actually found that Fannie Mae did not possess a valid mortgage lien against Julia and therefore imposed an equitable remedy. Nevertheless, because our review is de novo, we will discuss Julia's interest in relation to R.C. 5302.20.

of the record that demonstrate the absence of a genuine issue of material fact. *Bell* at ¶ 24. Once a party moving for summary judgment has satisfied its initial burden, the nonmoving party must then rebut the moving party's evidence with specific facts showing the existence of a genuine triable issue; it may not rest on the mere allegations or denials in its pleadings. *Id.*; Civ.R. 56(E).

{¶ 15} Foreclosure requires a two-step process. *Natl. City Bank v. Skipper*, 9th Dist. Summit. No. 24772, 2009-Ohio-5940, ¶ 25. A party seeking to foreclose on a mortgage must establish execution and delivery of the note and mortgage, a valid recording of the mortgage, that it is the current holder of the note and mortgage, default, and the amount owed. *BAC Home Loans Servicing, L.P. v. Kolenich,* 194 Ohio App.3d 777, 2011-Ohio-3345 (12th Dist.), quoting *Countrywide Home Loans, Inc. v. Baker,* 10th Dist. Franklin No. 09AP-968, 2010-Ohio-1329, ¶ 8. "Once a court has determined that a default on an obligation secured by a mortgage has occurred, it must then consider the equities of the situation in order to decide if foreclosure is appropriate." *Skipper* at ¶ 25.

**Survivorship Tenancy**

{¶ 16} This case requires us to analyze Ohio's survivorship tenancy statute, R.C. 5302.20. Statutory interpretation is a matter of law, and therefore requires de novo review. *State v. Niesen-Pennycuff*, 12th Dist. Warren No. CA2010-11-112, 2011-Ohio-2704, ¶ 6. We look to the plain language of the statute to determine the intent of the General Assembly. *State v. Hause*, 12th Dist. Warren No. CA2008-05-063, 2009-Ohio-548, ¶ 13, citing *State ex rel. Burrows v. Indus. Comm.*, 78 Ohio St.3d 78, 81 (1997). A court does not need to interpret a statute "when statutory language is plain and unambiguous and conveys a clear and definite meaning." *Niesen-Pennycuff* at ¶ 12, quoting *Campbell v. City of Carlisle*, 127 Ohio St.3d 275, 2010-Ohio-5707, ¶ 8. When the meaning of the statute is "clear and unambiguous," the statute is to be applied "as written." *Boley v. Goodyear Tire & Rubber*

*Co.*, 125 Ohio St.3d 510, 2010-Ohio-2550, ¶ 20.

{¶ 17} R.C. 5302.20, Ohio's survivorship tenancy statute provides,

(A) * * * [i]f any interest in real property is conveyed or devised to two or more persons for their joints lives and then to the survivor or survivors of them, those persons hold title as survivorship tenants, and the interest created is a survivorship tenancy. * * *

(B) If two or more persons hold an interest in the title to real property as survivorship tenants, each survivorship tenant holds an equal share of the title during their joint lives unless otherwise provided in the instrument creating the survivorship tenancy. Upon the death of any of them, the title of the decedent vests proportionately in the surviving tenants as survivorship tenants. * * * [when] only one survivorship tenant remains alive, * * * the survivor is fully vested with title to the real property as the sole title holder.

{¶ 18} Both parties concede and we agree that pursuant to R.C. 5302.20(A), Ligon and Julia owned the property as survivorship tenants as the deed granted Ligon and Julia the property, "for their joint lives, remainder to the survivor of them." Due to the survivorship tenancy, Ligon and Julia each owned equal shares in the property. R.C. 5302.20(B). The parties also agree that upon Ligon's death, his one-half interest passed to Julia by virtue of the survivorship tenancy. *Id.* The issue in this case is what effect the vesting of the entire survivorship interest in Julia had upon Fannie Mae's mortgage.

{¶ 19} R.C. 5302.20(C) discusses the ramifications and characteristics of survivorship tenancy. Subsection (C)(2) discusses conveyances from survivorship tenants to nonsurvivorship tenants.

* * * A *conveyance* from any survivorship tenant, or from any number of survivorship tenants that is from less than all of them, to a person who is not a survivorship tenant vests the title of the grantor or grantors in the grantee, *conditioned on the survivorship of the grantor or grantors of the conveyance,* and *does not alter the interest in the title of any of the other survivorship tenants* who do not join in the conveyance.

(Emphasis added.) R.C. 5302.20(C)(2).

{¶ 20} Julia argues that pursuant to R.C. 5302.20(C)(2), Fannie Mae's interest in the property was conditioned upon Ligon's survival. She asserts that upon his death, Fannie Mae's mortgage was extinguished. In support of this proposition, Julia cites several cases which have found that a conveyance of title from one survivorship tenant to a nonsurvivorship tenant was conditioned on the survival of the granting tenant. *Murphy v. Murphy*, 77 Ohio App.3d 573 (1st Dist.1991); *Wilson v. Brown*, 4th Dist. Lawrence No. 07CA13, 2008-Ohio-1743. In both *Murphy* and *Wilson*, the courts found that a survivorship tenant cannot deed away more of an interest than he possessed. *Murphy* at 576; *Wilson* at ¶ 16. Therefore, the conveyances of title from the survivorship tenants to a third party were conditioned on that tenant outliving all other survivorship tenants. *Id.* Upon the deeding tenant's death, the property was fully vested in the remaining tenant and the third party's interest was extinguished. *Id. See Brown v. Brown*, 95 Ohio Misc.2d 38 (C.P.1998).

{¶ 21} However, we find that subsection (C)(2) is inapplicable to the case at bar because it does not address the effect of conveying a mortgage. R.C. 5302.20(C)(2) provides that a "conveyance from any survivorship tenant" to a nonsurvivorship tenant "vests *title*" of the grantor in the grantee, conditioned on the survivorship of the grantor. Conveyance is defined as a "voluntary transfer of a right or of property." *Black's Law Dictionary* (9th ed. 2009). While a mortgage could be described as "voluntari[ly] transfer[ing] a right" in a property, the statute goes on to provide that this conveyance *vests title* in the nonsurvivorship tenant conditioned on the survivorship of the grantor. In Ohio, a mortgage is merely a security for a debt, and the legal and equitable title to the property remains in the mortgagor until the mortgage is foreclosed and a sale consummated, or until a mortgagee otherwise extinguishes the right of the mortgagor to redeem. *Stand Energy Corp. v. Epler*, 163 Ohio App.3d 354, 2005-Ohio-4820 (10th Dist.), ¶ 13; *Kirshner v. Fannie Mae*, 6th Dist. Lucas No. L-11-1027, 2012-Ohio-286, ¶ 16-17. Because the plain language of the statute

addresses "title" and under Ohio law mortgages do not convey title, we find that subsection (C)(2) does not apply to the situation where a survivorship tenant mortgages his or her interest in a property.

{¶ 22} Our interpretation of R.C. 5302.20(C)(2) is also not in conflict with *Murphy* and *Wilson*. In both of these cases, a survivorship tenant conveyed *title* to a nonsurvivorship tenant. As discussed above, Ligon did not convey title to Fannie Mae but instead granted Fannie Mae a security interest for a debt. Therefore, these cases are distinguishable and do not provide that Fannie Mae's interest was conditioned on Ligon's survival of Julia. Consequently, R.C. 5302.20(C)(2) does not control our analysis when a survivorship tenant mortgages his or her interest in a property.

{¶ 23} Therefore, upon Ligon's death, his interest immediately vested in Julia and she owned the entire property pursuant to R.C. 5302.20(B). While full title to the property immediately vested in Julia, this did not extinguish Fannie Mae's mortgage because the mortgage is merely a security for a debt until there is a default on the note and the mortgage is foreclosed and a sale consummated. Instead, the mortgage follows the property and Julia took the property subject to the mortgage.

{¶ 24} Our interpretation of the statute is further supported by subsection (C)(4). R.C. 5302.20(C)(4) provides,

> A creditor of a survivorship tenant may enforce a lien against the interest of one or more survivorship tenants by an action to marshall liens against the interest of the debtor or debtors. Every person with an interest in or lien against the interest of the debtor or debtors shall be made a party to the action. Upon a determination by the court that a party or cross-claimant has a valid lien against the interest of a survivorship tenant, the title to the real property ceases to be a survivorship tenancy and becomes a tenancy in common. Each tenant in common of that nature then holds an undivided share in the title. The interest of each tenant in common of that nature shall be equal unless otherwise provided in the instrument creating the survivorship tenancy. The court then may order the sale of the fractional

interest of the lien debtor or debtors as on execution, and the proceeds of the sale shall be applied to pay the lien creditors in order of their priority.

{¶ 25} This section clearly provides a procedure for creditors to enforce the liens given by one survivorship tenant against all the survivorship tenants of a property. The section allows a creditor "of a survivorship tenant" to enforce the action against the interest of "one or more survivorship tenants," and thus contemplates a creditor enforcing an action against survivorship tenants who did not grant the lien. This provision shows that legislators provided a procedure for creditors to enforce their action against a survivorship tenancy and not extinguish the lien upon the death of the debtor-survivorship tenant. At the time Ligon mortgaged his interest in the property, Fannie Mae's predecessor-in-interest was a "creditor of a survivorship tenant," and therefore Fannie Mae could file a foreclosure action and make "every person with an interest in" the property a party.

{¶ 26} Additionally, the interpretation of the statute advanced by Julia would create commercial uncertainty and allow debtors to avoid claims of creditors simply by the way property is held. Allowing a debtor-survivorship tenant to receive money by offering the property as security for a debt and then extinguishing that debt upon that debtor's death without providing the lender any recourse would be unreasonable. Further, permitting this result would discourage lenders from financing home purchases for couples when one person is unable to obtain financing for the purchase of a home but the couple wishes to hold the property in survivorship tenancy.

{¶ 27} While Fannie Mae's mortgage was not extinguished upon Ligon's death, its mortgage does not encumber the entire property. R.C. 5301.02 provides:

> Every grant, conveyance, or mortgage of lands, tenements, or hereditaments shall convey or mortgage the *entire interest which the grantor could lawfully grant, convey, or mortgage*, unless it clearly appears by the deed, mortgage, or instrument that the grantor intended to convey or mortgage a less estate.

(Emphasis added.)

{¶ 28} It is axiomatic that a "mortgagor can only bind the estate or property he has, and 'a mortgagee can take no greater title than that held by the mortgagor.'" *In re Knisley*, 437 B.R. 253, 258 (Bankr.S.D.Ohio 2010). When a survivorship tenant mortgages his interest in the property, the mortgage only encumbers the interest in the property that the survivorship tenant held when he executed the mortgage. *Id.* Therefore, the mortgagee can only foreclose upon the interest owned by the survivorship tenant when he executed the mortgage. *Id.*; *see White v. Parks*, 9th Dist. Summit No. 24391, 2009-Ohio-703, ¶ 11.

{¶ 29} Pursuant to the deed, Ligon owned the property as a survivorship tenant with Julia. Under R.C. 5302.20(B), Ligon and Julia each held an "equal share of the title during their joint lives." Therefore, when Ligon mortgaged his interest in the property, he only mortgaged his one-half share. Ligon could not mortgage the entire property as he did not hold exclusive title to the entire property. Consequently, Fannie Mae's mortgage encumbers only Ligon's undivided one-half interest in the property.

{¶ 30} Therefore, we find that the court erred when it found that Fannie Mae did not have an enforceable mortgage against Julia. R.C. 5302.20 does not provide that a lien is extinguished upon the debtor-survivorship tenant's death. Instead, R.C. 5302.20(C)(4) explicitly provides a procedure for creditors of a survivorship tenant to enforce their interest against nondebtor survivorship tenants. While Julia took the property subject to Fannie Mae's mortgage, Fannie Mae can only enforce its mortgage against Ligon's one-half interest in the property because Ligon only held a one-half interest and could only mortgage what he owned. Therefore, Fannie Mae may seek to enforce the mortgage against the property pursuant to R.C. 5302.20(C)(4), but it may only seek to enforce its security interest against Ligon's fractional share in the property.

{¶ 31} Thus, the court erred in finding that Fannie Mae did not possess a valid mortgage lien against Ligon's interest in the property. Nevertheless, based on our finding that Julia's interest was subject to Fannie Mae's foreclosure action, we overrule the first assignment of error.

**Equitable Remedy**

{¶ 32} Although the trial court found that Fannie Mae did not have a valid mortgage against Julia, the court used its powers in equity to impose an equitable lien, constructive trust, and/or a purchase-money resulting trust to allow Fannie Mae to foreclose upon the entire property. While we have found that Fannie Mae's mortgage was not extinguished upon Ligon's death, Fannie Mae's mortgage only encumbered one-half of the property. Therefore, we will address whether Fannie Mae is entitled to the imposition of an equitable remedy against Julia's interest.

{¶ 33} In her brief, Julia argues that because the deed, the note, and the mortgage were unambiguous contracts, the court should have merely enforced the documents and refused to look to extrinsic evidence to impose an equitable remedy. When confronted with an issue of contract interpretation, our role is to give effect to the intent of the parties. *Pierce Point Cinema 10, L.L.C. v. Perin-Tyler Family Found., L.L.C.*, 12th Dist. Clermont No. CA2012-02-014, 2012-Ohio-5008, ¶ 11, citing *Sunoco, Inc. v. Toledo Edison Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720, ¶ 37. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. *Pierce Point* at ¶ 13. However, when a contract is ambiguous, a court may consider extrinsic evidence to ascertain the parties' intent. *Id.*

{¶ 34} While the deed, the note, and the mortgage are unambiguous, Fannie Mae specifically requested in its complaint that the trial court impose an equitable remedy to allow it to foreclose on the entire property. A deed is not itself "determinative of all interests in the

- 11 -

property." *Danadic v. McCloskey*, 11th Dist. Trumbull No. 2010-T-0032, 2010-Ohio-5660, ¶ 34. Instead, courts impose equitable remedies in regards to interests in real property and look to extrinsic evidence in this determination. *Katz v. Banning*, 84 Ohio App.3d 543, 551(10th Dist.1992); *Estate of Cowling v. Estate of Cowling*, 109 Ohio St.3d 276, 2006-Ohio-2418, ¶ 18. *See Danadic* at ¶ 33-35 (parol evidence admissible to determine equitable interest); *Latina v. Woodpath Dev. Co.*, 57 Ohio St.3d 212, 214 (1991) (equitable reformation requires evidence between parties that contract does not represent final agreement). Therefore, the court did not err in considering extrinsic evidence when determining whether to impose an equitable remedy.

{¶ 35} We now consider whether an equitable remedy should be imposed against Julia's one-half interest in the property. The trial court imposed an equitable lien in favor of Fannie Mae. "An equitable lien is a right, not acknowledged in law, to have a fund, or specific property, or its proceeds, applied, in whole or in part to the payment of a particular debt or class of debts. It is merely a charge on property for the purpose of security and is ancillary to and separate from the debt itself." *Campbell v. Krupp*, 195 Ohio App.3d 573, 2011-Ohio-2694, ¶ 65 (6th Dist.), quoting 66 Ohio Jurisprudence 3d, Liens, Section 16 (2011). An equitable lien arises from either "(1) a written agreement indicating an intent to make a particular property a security for a debt or obligation, or (2) from implication by a court of equity upon consideration of right and justice as applied to the relations of the parties and the circumstances of their dealings." *Katz v. Banning*, 84 Ohio App.3d 543, 551 (10th Dist.1992), citing *Syring v. Sartorious*, 28 Ohio App.2d 308, 311 (4th Dist.1971).

{¶ 36} We find that Fannie Mae is not entitled to an equitable lien over Julia's one-half interest in the property. As discussed previously, Ligon merely granted a lien of his one-half interest to Fannie Mae's predecessor-in-interest when he mortgaged the property. *See Knisley*, 437 B.R. at 258. Therefore, even before Ligon's death, the most Fannie Mae's

mortgage was secured by was a one-half interest. Even if Ligon had not died, Fannie Mae would only be entitled to foreclose upon Ligon's one-half interest in the property. *White*, 9th Dist. Summit No. 24391, 2009-Ohio-703 at ¶ 11; R.C. 5302.20(C)(4). Thus, under the principles of equity, we find that an equitable lien should not be imposed against Julia's interest. We find this remedy to be equitable in light of the lack of any conduct on behalf of Julia that was fraudulent or unjust and the fact that Fannie Mae, a sophisticated commercial lender, made a series of dilatory actions even though the deed, mortgage, and note made clear the nature of the ownership of the property. *See Wells Fargo v. Mowery*, 187 Ohio App.3d 268, 2010-Ohio-1650, ¶ 38 (4th Dist.).

**{¶ 37}** Fannie Mae also argues that a constructive trust should be imposed. A constructive trust is a

> Trust by operation of law which arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. It is raised by equity to satisfy the demands of justice.

*Estate of Cowling*, 2006-Ohio-2418 at 18, quoting *Ferguson v. Owens*, 9 Ohio St.3d 223, 225 (1984). A constructive trust is considered a trust because "'[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee.'" *Cowling* at ¶ 18.

**{¶ 38}** A constructive trust is an equitable remedy that protects against unjust enrichment and is usually invoked when property has been obtained by fraud. *Cowling* at ¶ 19. "[A] constructive trust may also be imposed where it is against the principles of equity that the property be retained by a certain person even though the property was acquired without fraud." *Id.*, quoting *Ferguson* at 226. "In applying the theories of constructive trusts,

courts also apply the well-known equitable maxim, 'equity regards [as] done that which ought to be done.'" *Cowling* at ¶ 19, quoting *Ferguson* at 226. The party seeking to have a constructive trust imposed bears the burden of proof by clear and convincing evidence. *Univ. Hosps. of Cleveland, Inc. v. Lynch*, 96 Ohio St.3d 118, 2002-Ohio-3748, paragraph three of the syllabus.

{¶ 39} We find that Fannie Mae is not entitled to a constructive trust over Julia's interest in the property. While Fannie Mae has not alleged that Julia obtained an interest in the property fraudulently, a constructive trust may also be imposed where it would be against the principles of equity for Julia to retain an interest in the property free and clear of Fannie Mae's mortgage. Equity does not require a constructive trust to be imposed against Julia's interest inasmuch as Fannie Mae is a commercial lender who had notice that Julia was not a party to the note or mortgage. Additionally, as discussed above, the most interest Fannie Mae's mortgage encumbered was a one-half interest. Thus, under the principles of equity, we find that a constructive lien should not be imposed over Julia's one-half interest in the property.

{¶ 40} Lastly, Fannie Mae argues that it is entitled to a purchase-money resulting trust. A resulting trust is based on the parties' intentions. *Brate v. Hurt*, 174 Ohio App.3d 101, 2007-Ohio-6571, ¶ 28 (12th Dist.), citing *Gabel v. Richley*, 101 Ohio App.3d 356, 363 (2d Dist.1995). A resulting trust arises when property is transferred under circumstances that raise an inference that the transferor, or the person who caused the transfer, did not intend the transferee to take a beneficial interest in the property. *Brate* at ¶ 28.

{¶ 41} There are three types of resulting trusts, one of which is a purchase-money resulting trust. *Brate* at ¶ 29, citing *First Natl. Bank of Cincinnati v. Tenney*, 165 Ohio St. 513 (1956). A purchase-money resulting trust "arises where title to property is transferred to one person, but the purchase price is paid by another." *Brate* at ¶ 30, quoting *Gabel* at 364.

"Such a situation raises an inference that the title-holder is not intended to possess a beneficial interest in the property." *Brate* at ¶ 30.

{¶ 42} In such a case, a resulting trust arises in favor of the person by whom the purchase price is paid. *Rardin v. Estate of Bain*, 7th Dist. Carroll No. 08 CA 853, 2009-Ohio-3332, ¶ 83. Central to the determination of whether a purchase-money resulting trust exists are the issues of (1) who paid for the purchase and (2) who was intended to beneficially enjoy the property. *Id.* The burden of proof to establish a purchase-money resulting trust is clear and convincing evidence. *Ohman v. Ohman*, 5th Dist. Stark No. 2001CA214, 2001 WL 1673714, *2 (Dec. 27, 2001).

{¶ 43} Fannie Mae is also not entitled to a purchase-money resulting trust over Julia's interest in the property. A purchase-money resulting trust arises when property is transferred under circumstances that raise an inference that the transferor did not intend for the transferee to take a beneficial interest in the property. In this case, the evidence established that Julia was intended to have a beneficial interest in the property as her name was on the deed of the property, she lived with Ligon for 30 years, the couple had discussed that they would buy a house together, and Ligon would hold the mortgage while Julia would be on the deed. While Julia did not contribute to the mortgage payments until after Ligon's death, she did maintain the home. Therefore, Fannie Mae is not entitled to a purchase-money resulting trust over Julia's one-half interest in the property.

{¶ 44} Julia's second assignment of error is sustained.

## Conclusion

{¶ 45} The trial court did not err in granting summary judgment and a decree of foreclosure in favor of Fannie Mae. However, the trial court erred in both determining that Fannie Mae did not possess a valid mortgage lien and imposing an equitable remedy to allow Fannie Mae to foreclose upon the property. Instead, under R.C. 5302.20, Fannie Mae's

mortgage was not extinguished upon Ligon's death and Julia took the property subject to the mortgage. Fannie Mae's mortgage only encumbered Ligon's one-half interest in the property. Additionally, Fannie Mae is not entitled to an equitable remedy in regards to Julia's one-half interest in the property.

{¶ 46} Fannie Mae's mortgage is enforceable against Julia and the property may be sold to enforce Fannie Mae's mortgage. We note that in effectuating this sale, the trial court may order the sale of the entire property and preserve Julia's one-half interest by ordering that she be paid before any sale proceeds are directed to judgment creditors. *See White*, 9th Dist. Summit No. 24391, 2009-Ohio-703 at ¶ 11. In all other respects the judgment of the trial court is affirmed.

HENDRICKSON and PIPER, JJ., concur.