[Cite as *Morgensen v. Pullin*, 2026-Ohio-695.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| DAVID MORGENSEN, | : | |
| Appellee, | : | CASE NO. CA2025-08-071 |
| vs. | : | OPINION AND JUDGMENT ENTRY 3/2/2026 |
| JAMES PULLIN, et al., | : | |
| Appellants. | : | |
| | : | |


CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 17CV90599


Hoffer Law, LLC, and Tyler J. Hoffer, for appellee.

DannLaw, and Andrew M. Engel and Marc E. Dann, for appellant.


# **O P I N I O N**


**SIEBERT, J.**

{¶ 1} Appellants, James and Rebekah Pullin (collectively, the "Pullins"), appeal a decision from the Warren County Court of Common Pleas, denying their motion to vacate. We conclude, based on this opinion's reasoning, that the Warren County court had jurisdiction to resolve this matter, that the Pullins' arguments regarding the effect of the

bankruptcy proceedings are without merit, and all of their ancillary assertions are likewise meritless. Accordingly, the Warren County court did not err in denying the motion to vacate.

## I. Facts and Procedural History

*2015 Lawsuit*

{¶ 2} This case arises from a dispute between the Pullins and David Morgensen, Rebekah's father, and James' father-in-law. In June 2015, Morgensen filed suit against James in the Clinton County Court of Common Pleas ("Clinton County court") following a failed business partnership (the "2015 Lawsuit"). On March 9, 2017, Morgensen and James entered into an agreed judgment entry resolving the 2015 Lawsuit in Morgensen's favor in the amount of $43,162 (the "Settlement").

{¶ 3} At the time of the 2015 Lawsuit, James owned a one-half interest in real property located at 150 Valley Street in Midland, Ohio (the "Midland Property"), and Rebekah owned the remaining one-half interest. In March 2016, the Pullins sold the Midland Property for $148,000 and purchased a new residence at 5355 Harveysburg Road, Waynesville, Ohio (the "Waynesville Property") for $272,000. Although the Midland Property had been titled in both of their names, the Pullins titled the Waynesville Property solely in Rebekah's name.

*Fraudulent Conveyance Lawsuit*

{¶ 4} On September 11, 2017, Morgensen filed a fraudulent conveyance action ("Fraudulent Conveyance Lawsuit") against the Pullins in the Clinton County court, arising from the sale of the Midland Property. The complaint alleged that the Midland Property contained significant equity and that the Pullins transferred that equity from their joint ownership interest in the Midland Property to Rebekah's sole ownership of the Waynesville Property, with the actual intent to defraud, hinder, or delay Morgensen in

collecting on his judgment for the 2015 Lawsuit.

{¶ 5} On November 30, 2017, the Pullins moved to dismiss the Fraudulent Conveyance Lawsuit or, in the alternative, to transfer venue to Warren County, Ohio because the Waynesville Property was located in Warren County. On December 14, 2017, the Clinton County judge signed an agreed entry the parties had executed, which stated the matter should be transferred to the Warren County Court of Common Pleas ("Warren County court") pursuant to Civ.R. 3(D).

{¶ 6} On December 15, 2017, James filed for bankruptcy in the United States District Court ("federal bankruptcy court)" triggering an automatic stay of the proceedings as to him. The Clinton County Clerk of Courts ("Clinton County Clerk") journalized the agreed entry described in the preceding paragraph, which authorized the transfer of the case to the Warren County court on December 20, 2017, at 11:46 am. James filed a Suggestion of Stay in the Clinton County court on December 20, 2017, at 2:09 pm. On December 26, 2017, the Clinton County Clerk transferred the case and the corresponding record to the Warren County court, pursuant to the agreed judgment entry journalized on December 20, 2017.

{¶ 7} Morgensen thereafter sought relief from the stay in federal bankruptcy court. Although the federal bankruptcy court denied that request, it clarified that the automatic stay did not apply to Rebekah or to any action against property[1] owned by her, including

---

1. The parties to this action used the Latin phrase "in rem," which translates to "against a thing." *Black's Law Dictionary* (12th Ed. 2024). The parties use this to refer to the portion of the relevant lawsuits where Morgensen only pursued relief against the property at issue (e.g., through a lien). "In personam" is the Latin phrase the parties use for any argument related to a judgment or action against James or Rebekah personally—it translates to "against a person." *Black's Law Dictionary* (12th Ed. 2024). This court finds it important that everyone reading its opinions can understand them, so it generally avoids the use of Latin phrases, especially when they impact a substantive or critical question before the court. Therefore, this opinion will only use "against the [property]" or "against James [or Rebekah] personally" when necessary to distinguish the terms.

the Waynesville Property.[2]

{¶ 8} On July 24, 2018, the federal bankruptcy court lifted the stay, and the Warren County court ordered Morgensen to file an amended complaint. The amended complaint again alleged that the Pullins transferred real estate equity in the Midland Property to Rebekah with the actual intent to defraud, hinder, or delay the collection of the Settlement proceeds. It further specified that, in light of James' bankruptcy discharge, Morgensen sought no relief against James personally; any remedy would be against the Waynesville Property only, based on James' potential dower interest in it.

{¶ 9} On September 20, 2018, the Pullins sold the Waynesville Property and purchased a new residence at 1024 Spruce Glenn, Morrow, Ohio (the "Morrow Property"). James and Rebekah held joint fee simple title to the Morrow Property, with rights of survivorship. Following trial, the Warren County court amended the complaint pursuant to Civ.R. 15(B), to be against the Morrow Property in order to conform with the evidence presented.

{¶ 10} The matter thereafter proceeded to a bench trial. On March 5, 2020, the magistrate issued a decision ("Magistrate's Decision") finding that the Pullins had fraudulently transferred assets and awarded Morgensen an equitable lien against the Morrow Property in the amount of $43,162.[3]

{¶ 11} The Pullins filed objections, but the Warren County court overruled them and adopted the Magistrate's Decision. In its June 17, 2020 entry ("June 2020 Decision"),

---

2. Although the action could have proceeded against Rebekah, the record reflects that little activity occurred on the docket. The record shows that Morgensen filed a motion to reactivate the case, to which the Pullins filed a response, and Morgensen filed a reply. The Warren County court subsequently issued a notice scheduling a hearing on the motion to reactivate; however, no further action was taken.

3. The Magistrate's Decision permitted an amendment to the pleadings to conform with the evidence presented at trial, to allow for the imposition of an equitable lien on the Morrow Property. *See* Civ.R. 15(B).

the Warren County court found that Rebekah qualified as an "insider" under R.C. 1336.01(G)(1)(a) and that the series of real estate transactions exhibited multiple badges of fraud, demonstrating the Pullins' actual intent to hinder, delay, or defraud Morgensen. The Pullins did not file a direct appeal of the June 2020 Decision.

*Foreclosure Lawsuit and Motion to Vacate*

{¶ 12} On April 24, 2024, Morgensen filed a complaint in the Warren County court seeking to foreclose on the equitable lien imposed against the Morrow Property (the "Foreclosure Lawsuit").[4]

{¶ 13} On June 13, 2025, nearly five years after judgment had been entered, the Pullins filed a motion to vacate the June 2020 Decision. They asserted that the Warren County court lacked jurisdiction, that its prior rulings were null and void due to alleged bankruptcy violations, and that no final appealable order had ever been entered. The Warren County court denied the motion in a written decision issued on July 14, 2025, explaining:

> First, the Court finds [the Pullins'] third argument lacks merit[], as a final order[] was rendered by this Court on June 17, 2020. Second, the Court finds all of [the Pullins'] arguments are barred by the doctrine of res judicata as they could have been addressed in a timely appeal. This Court specifically ruled that the case could be reactivated after staying the matter under a bankruptcy stay. Thus, the issue was reviewed and addressed by this Court and subject to appellate review should [the Pullins] have chosen to file a timely appeal. Third, insomuch as [the Pullins] are attempting to present a Civ.R. 60(B) argument, such argument is untimely.

*Filing of the Notice of Appeal and Assignment of Error*

{¶ 14} The Pullins filed a timely notice of appeal on August 11, 2025. Although framed as jurisdictional and bankruptcy-based challenges, the issues—some of which

---

4. Following Morgensen's death, his estate was substituted as the plaintiff. For continuity, we only refer to Morgensen, even when referencing events following his estate's substitution.

overlap—ultimately concern the validity of a final judgment that the Pullins never appealed. In so doing, the Pullins present a single assignment of error, divided into four issues, each challenging the validity of the proceedings that culminated in the June 2020 Decision.

> **Assignment of Error No. 1**: The [Warren County court] erred in denying Appellants' motion to vacate proceedings and judgment.
>
> Issue presented for Review No. 1: Whether an order transferring between [the trial courts], entered in violation of the Bankruptcy Code's automatic stay, is void.
>
> Issue presented for Review No. 2: Whether *res judicata* based on a state court judgment can ever bar assertion of a violation of the Bankruptcy Code's automatic stay or discharge injunction.
>
> Issue presented for Review No. 3: Whether a [Warren County court] order creating a lien on real estate acquired a person [sic] who received a bankruptcy discharge for the underlying debt is void as being in violation of the Bankruptcy Code's discharge injunction.
>
> Issue presented for Review No. 4: Whether a [Warren County court] decision that expressly anticipates the entry of a final judgment entry is a final order on which an execution can be based.

## II. Appeal

{¶ 15} In their sole assignment of error, the Pullins argue that the Warren County court erred in overruling their motion to vacate, asserting that "the Warren County court never obtained jurisdiction over the case and could not exercise any jurisdiction over it."

*Standard of Review*

{¶ 16} A trial court's authority to vacate a void judgment does not arise from Civ.R. 60(B), but from the inherent power of Ohio courts. *Ohio State Aerie Fraternal Order of Eagles v. Alsip*, 2013-Ohio-4866, ¶ 10 (12th Dist.). Courts have long recognized that they possess the "inherent power to vacate a void judgment because such an order simply

recognizes the fact that the judgment was always a nullity." *Wright v. Brice*, 2021-Ohio-2246, ¶ 16 (10th Dist.), citing *Green Tree Servicing, L.L.C. v. Kramer*, 2011-Ohio-1408, ¶ 31 (2d Dist.). *Accord Patton v. Deimer*, 35 Ohio St.3d 68, 70 (1988). Thus, when a trial court issues an order without jurisdiction, the court of appeals may properly vacate that order and dismiss any appeal taken from it. *Fifth Third Mtge., Co. v. Rankin*, 2012-Ohio-2804, ¶ 9 (4th Dist.).

*Warren County Jurisdiction*

{¶ 17} On appeal, the Pullins advance a muddled argument that conflates issues of jurisdiction, the effect of federal bankruptcy proceedings, and the transfer of the case from the Clinton County court to the Warren County court. It is well established that "once a court transfers a case to another venue in another county, the county to which the case was transferred assumes 'complete jurisdiction over the cause of action.'" *Rose v. Cochran*, 2013-Ohio-3755, ¶ 18 (2d Dist.), quoting *State ex rel. Starner v. DeHoff*, 18 Ohio St.3d 163, 165 (1985).

{¶ 18} In this case, Morgensen filed the 2015 Lawsuit in the Clinton County court, eventually resulting in a judgment against James in the amount of $43,162, and the parties later entered into a Settlement for that amount. Morgensen also initiated the Fraudulent Conveyance Lawsuit in the Clinton County court, but the parties later executed an agreed entry transferring the matter to the Warren County court. The day after the parties executed the agreed entry, James filed a bankruptcy petition, which—as we will discuss in more detail below—triggered an automatic stay. The transfer entry, however, was not journalized by the Clinton County Clerk until later, on December 26, 2017.

{¶ 19} From this sequence of events, the Pullins construct their argument. They first contend that because James filed for bankruptcy before the Clinton County Clerk journalized the transfer order, all subsequent proceedings violated the automatic stay,

thereby depriving the Warren County court of jurisdiction and rendering its orders a nullity. Alternatively, they contend that even if the Warren County court properly acquired jurisdiction, James' continued participation in the litigation after his bankruptcy discharge rendered the court's June 2020 Decision void. We find these arguments unpersuasive.

{¶ 20} The automatic-stay provision of the Federal Bankruptcy Code is set forth in Section 362(a), Title 11, U.S. Code. It provides that the filing of a bankruptcy petition operates as a stay of:

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

*State ex rel. Petro v. Mid Ohio Petroleum Co.*, 2005-Ohio-6271, ¶ 5 (12th Dist.). The automatic stay arises immediately upon the filing of a bankruptcy petition and requires no judicial intervention. *US Bank Natl. Assn. v. Collier*, 2008-Ohio-6817, ¶ 34 (10th Dist.).

{¶ 21} There is no dispute that James' bankruptcy petition triggered an automatic stay as to the continuation of the proceedings against him, including Morgensen's Fraudulent Conveyance Lawsuit. Ohio courts have consistently recognized, however, that the automatic stay applies only to the debtor and does not extend to non-bankrupt co-defendants. *Miller v. Sun Castle Ents., Inc.*, 2008-Ohio-4669, ¶ 28 (11th Dist.); *Woodell v. Ormet Primary Aluminum Corp.*, 2004-Ohio-1558, ¶ 14 (7th Dist.); *Waco Scaffolding & Equip. Co. v. Shaffer & Sons*, 2003-Ohio-6775, ¶ 21 (5th Dist.).[5]

---

5. We recognize that, in rare circumstances, an automatic stay may be extended to a bankrupt debtor's nonbankrupt co-defendants, but only upon order of the bankruptcy court. *Jo-Rene Corp. v. Jastrzebski*, 2002-Ohio-1550, ¶ 22-26 (8th Dist.), citing *Patton v. Bearden*, 8 F.3d 343, 349 (6th Cir. 1993). Even in those limited situations, the weight of authority holds that, in order to apply an automatic stay to a non-bankrupt co-defendant, the debtor must request and obtain a stay from the bankruptcy court in which the action is pending. (Cleaned up.) *Fifth Third Bank v. L&A Invests.*, 2010-Ohio-3769, ¶ 21 (2d Dist.) Those circumstances are not present here.

{¶ 22} The record reflects that on December 14, 2017, the parties executed an agreed entry transferring the case from the Clinton County court to the Warren County court. James filed his bankruptcy petition the following day, thereby invoking the automatic stay as to himself.[6] The Clinton County Clerk journalized the transfer entry on December 26, 2017.

{¶ 23} Even assuming the automatic stay could have affected the transfer order as it related to James, it plainly did not apply to the claims asserted against Rebekah. The bankruptcy court confirmed the same, clarifying that the stay did not apply to any action against Rebekah or against the relevant property. The Warren County court therefore retained authority to proceed against Rebekah or against the relevant property. Moreover, during the pendency of the bankruptcy, the Warren County court took no substantive action other than scheduling a case-management conference.

{¶ 24} After receiving notice that the bankruptcy proceedings had concluded, the Warren County court reactivated the case. The magistrate granted Morgensen 14 days to file an amended complaint, which he did on August 2, 2018. The amended complaint expressly stated that Morgensen sought no relief against James personally and that any relief against him was limited to claims against the Waynesville Property, relating to his alleged dower interest in the same.

{¶ 25} The case thereafter proceeded to a bench trial before the magistrate, who resolved the Fraudulent Conveyance Lawsuit in Morgensen's favor, finding numerous badges of fraud, granting an equitable lien on the Morrow Property in the amount of $43,162. The Warren County court overruled the Pullins' objections to the Magistrate's

---

6. Although not dispositive to this question, we note that James did not file his Suggestion of Stay until after the Clinton County Clerk journalized the agreed entry authorizing the transfer of the Fraudulent Conveyance Lawsuit to the Warren County court.

Decision, adopting it as fully rewritten in its June 2020 Decision.

{¶ 26} Although the Pullins insist the Warren County court lacked jurisdiction, they offer no meaningful legal support for that claim. First, the automatic bankruptcy stay did not apply to Rebekah or to any action against the relevant property, and the Warren County court plainly had jurisdiction to proceed against her or against the relevant property. Second, the bankruptcy case had concluded well before the bench trial and entry of final judgment in the Fraudulent Conveyance Lawsuit. Thus, even assuming the automatic stay had been implicated at some earlier stage, it was no longer in effect when the Warren County court rendered its decision. *See Bank of Am. v. Williams*, 2017-Ohio-7166, ¶ 13 (8th Dist.). Finally, even in instances where a court has acted in violation of an automatic stay, the Sixth Circuit—where Ohio sits—has held that such actions are not void, but merely voidable. *US Bank Natl. Assn. v. Collier*, 2008-Ohio-6817, ¶ 36, citing *Easley v. Pettibone Michigan Corp.*, 990 F.2d 905, 909-910 (6th Cir. 1993) (holding that actions taken in violation of a bankruptcy stay are voidable).[7]

{¶ 27} Even assuming, arguendo, that the Clinton County court erred by transferring the Fraudulent Conveyance Lawsuit to the Warren County court because that suit named James as a party, it would render the transfer voidable, not void. Morgensen later amended his complaint to clarify he did not seek relief against James personally, but only relief against the relevant property, related to James' future dower interest, and against Rebekah personally. With that amendment, the portion of the Fraudulent Conveyance Lawsuit, naming James personally, could be deemed void under the

---

7. Although not meaningfully addressed by the parties, the circumstances of this case would also likely warrant application of an equitable exception to the automatic stay. *See JDI Murray Hill, L.L.C. v. Flynn Properties, L.L.C.*, 2011-Ohio-301, ¶ 24 (8th Dist.). That exception applies in limited circumstances where required by consideration of justice. *Id.* at ¶ 20. In such circumstances, there is no violation of the automatic stay, and the judgment is neither void nor voidable. *Id.* at ¶ 21. However, because the parties did not meaningfully brief the issue and the Warren County court did not address it, we decline to apply the equitable exception in this case.

voidability doctrine, while retaining the claims against Rebekah and against the relevant property. This is exactly what happened, as the Warren County court never issued judgment against James personally.

{¶ 28} We further disagree with the Pullins' suggestion that James' bankruptcy discharge of his personal debt impacted the validity of proceedings or rendered them void. Although James may have discharged his personal liability through the bankruptcy court, "a bankruptcy discharge only relieves the debtor of its own personal obligations and does not relieve others of liability on the debt." *Weaner & Assocs., L.L.C. v. 369 W. First, L.L.C.*, 2020-Ohio-48, ¶ 101 (2nd Dist.). Morgensen notes in the record that he did not file the Foreclosure Lawsuit until Rebekah's one-half interest in the Morrow Property, taking into consideration the homestead exemption, was sufficient to satisfy the judgment in the June 2020 Decision. This fact is undisputed by the Pullins. James shares title with Rebekah on the Morrow Property in fee simple, with rights of survivorship. Ohio is one of only four states to recognize dower interests in property, but Ohio courts have consistently held that dower interests only apply to non-title-holding spouses. *See Std. Fed. Bank v. Staff*, 2006-Ohio-3601, ¶ 21 (1st Dist.). Because he holds title, James has no dower interest in the Morrow Property.

{¶ 29} The June 2020 Decision adopted the Magistrate's Decision that James fraudulently transferred money to Rebekah in order to defraud Morgensen out of the Settlement he was entitled to as a result of the 2015 Lawsuit. Based upon that finding, the June 2020 Decision granted an equitable lien against the Morrow Property in the amount of $43,162, plus statutory interest. "'An equitable lien is a right, not acknowledged in law, to have a fund, or specific property, or its proceeds, applied, in whole or in part to the payment of a particular debt or class of debts. It is merely a charge on property for the purpose of security and is ancillary to and separate from the debt itself.'" *Fannie Mae*

*v. Winding*, 2014-Ohio-1698, ¶ 35 (12th Dist.), quoting *Campbell v. Krupp*, 2011-Ohio-2694, ¶ 65 (6th Dist.), quoting 66 Ohio Jurisprudence 3d, Liens, Section 16 (2011). As such, the Warren County court could impose an equitable lien against the Morrow Property in order to secure the judgment.

{¶ 30} And we find the Warren County court acted within its rights to impose the equitable lien against the entire Morrow Property, even though James and Rebekah jointly owned it with rights of survivorship. In *Winding*, this court found that an equitable lien should not be imposed upon the survivor's interest in a property she held with the debtor, as a survivorship tenant. *Winding* at ¶ 36. But we premised this finding "in light of the lack of any conduct on behalf of [the survivor] that was fraudulent or unjust." *Id*. Here, rather than a "lack" of fraudulent or unjust conduct, the Warren County court specifically concluded that "James and Rebekah fraudulently transferred assets out of the Midland property to the Waynesville property and from the Waynesville property to the Morrow Property in an effort to hinder, delay, and defraud [Morgensen] out of the $43,126 he was entitled to from the 2015 Lawsuit." To find the Warren County court could not grant the equitable lien against the entire Morrow Property in light of James and Rebekah's fraud against her now-deceased father would not afford anyone justice—it would heap an injustice on top of an injustice.

{¶ 31} Accordingly, we find no merit to the arguments raised by the Pullins. The Warren County court acted properly and with jurisdiction to resolve the Fraudulent Conveyance Lawsuit, as amended.

*Remaining Arguments Raised*

{¶ 32} The Pullins raise several additional arguments that, in light of our resolution of the foregoing issues, require only brief discussion. They assert that the Warren County court erred by concluding that their claims were barred by the doctrine of res judicata.

However, even assuming, arguendo, that the Warren County court improperly relied on res judicata, any such error would not warrant reversal. It is well established that a reviewing court must affirm a judgment that reaches the correct result, even if the trial court relied upon an incorrect rationale. *See French v. New Paris*, 2011-Ohio-1309, ¶ 42 (12th Dist.), citing *Johnson v. Am. Family Ins*., 2005-Ohio-1776, ¶ 29 (6th Dist.). Because the judgment is supported on other grounds, any error in the Warren County court's reasoning was not prejudicial.

{¶ 33} Finally, the Pullins claim that the June 2020 Decision was not a final appealable order. They state that the Magistrate's Decision suggested further action was required and parse the language of the Warren County court's entry to claim that the court "stopped short of ordering actual relief. It stated only that [Morgensen] was entitled to relief." We find these arguments to be without merit.

{¶ 34} First, the Magistrate's Decision stated that "[c]ounsel for Plaintiff shall prepare and present an appropriate final judgment entry for the Court's signature upon its adoption of this decision." The Pullins argue Morgensen never prepared or presented this entry, which negated the finality of the June 2020 Decision. Not so. The Warren County court adopted the Magistrate's Decision "as if fully rewritten" but included its own judgment entry as part of the June 2020 Decision. Therefore, the June 2020 Decision rendered as moot the requirement for Morgensen's counsel to prepare a judgment entry.

{¶ 35} Second, contrary to the Pullins' characterization, the June 2020 Decision expressly stated Morgensen was "entitled to judgment" in the form of an equitable lien on the Morrow Property and against Rebekah. The Pullins assert, without citing any supporting authority, that the Warren County court's "entitlement" language stopped short of "granting" relief to Morgensen. But "entitle" means "to *grant* a legal right." (Emphasis added.) *Black's Law Dictionary* (12th Ed. 2024).

{¶ 36} We find the Warren County court granted relief and resolved all issues then pending before the court. The Warren County court imposed an equitable lien in Morgensen's favor and left no claims or matters unresolved. The authorities cited by the Pullins are inapposite to the circumstances presented here. *See State ex rel. Electrolert v. Lindeman*, 99 Ohio App.3d 154, 155 (2d Dist. 1994) (appellate court issued a writ of prohibition to prevent enforcement of an interlocutory order); *Aselage v. Lithoprint, Ltd*., 2009-Ohio-7036, ¶ 28-29 (2d Dist.) (non-final, interlocutory order not capable of execution); *Wheeler v. Ohio State Univ. Med. Ctr*., 2004-Ohio-2769, ¶ 19-20 (4th Dist.) (concluding that a motion to vacate was a nullity where the case had already been dismissed with prejudice). Here, despite the Pullins' speculation to the contrary, nothing remained for further adjudication. Accordingly, the June 2020 Decision constituted a final appealable order, and their arguments to the contrary are overruled.

### III. Conclusion

{¶ 37} The entire point of the statute addressing fraudulent transfers is to protect creditors from illegitimate property transfers designed to avoid a legitimate debt owed. Neither bankruptcy law nor Ohio law shields James and Rebekah from the consequences of their fraudulent actions. Throughout this appeal, the Pullins urge this court to split technical, rhetorical hairs in their favor ("void" vs. "voidable," issues surrounding bankruptcy stay and jurisdiction after transfer, res judicata, and "entitle" vs. "grant" to name but a few). And they do so in order to avoid being held accountable for the judgment against the Morrow Property for their fraud against Rebekah's now deceased father, which was rendered after a full and fair trial. This court will not perform an end-around these laws protecting creditors from fraud by splitting these hairs. The Warren County court did not err by denying the Pullins' motion to vacate. The Pullins' sole assignment of error is overruled.

**{¶ 38}** Judgment affirmed.


HENDRICKSON, P.J., and M. POWELL, J., concur.


## J U D G M E N T   E N T R Y


The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Warren County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.


/s/ Robert A. Hendrickson, Presiding Judge


/s/ Mike Powell, Judge


/s/ Melena S. Siebert, Judge